**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Edison JORDAN, Defendant–Appellant.**

Nos. 89–8056, 89–8213.

United States Court of Appeals,
Eleventh Circuit.

Oct. 19, 1990.

William T. Moore, Savannah, Ga. (court-appointed), for defendant-appellant.

Arthur W. Leach, Asst. U.S. Atty., Savannah, Ga., for plaintiff-appellee.

Before HATCHETT and ANDERSON, Circuit Judges, and DYER, Senior Circuit Judge.

ANDERSON, Circuit Judge:

Appellant Edison Jordan pled guilty to one count of conspiracy to possess with intent to distribute cocaine in violation of

21 U.S.C. § 846. He was sentenced on May 11, 1988 to 70 months imprisonment, a five year term of supervised release, and a $50 special assessment. Because Jordan's crime took place after November 1, 1987, his sentence was imposed in accordance with the Sentencing Reform Act of 1984.[1]

Seven months after sentencing, Jordan filed a *pro se* motion, styled as a motion to correct and vacate the portion of his sentence imposing five years of supervised release. Relying upon *Bifulco v. United States*, 447 U.S. 381, 100 S.Ct. 2247, 65 L.Ed.2d 205 (1980), Jordan argued that his offense of conviction, 21 U.S.C. § 846, did not authorize the imposition of a supervised release term. Upon review of Jordan's motion, the district court rejected Jordan's claim.[2]

■ Two issues have been raised in this appeal. First, the question has arisen as to whether the district court possessed jurisdiction to consider the merits of Jordan's motion. Second, assuming jurisdiction was properly invoked, Jordan contends that the district court erred in not concluding that *Bifulco* precludes the imposition of a supervised release term for defendants convicted under 21 U.S.C. § 846.[3] Because we find that the district court displayed the appropriate sensitivity to the fact that Jordan's motion challenging his sentence was

filed *pro se*, we conclude that the district court properly assumed jurisdiction over the motion pursuant to 28 U.S.C. § 2255. Additionally, we conclude as a matter of law that there is no merit to Jordan's *Bifulco* argument. Accordingly, we affirm the judgment of the district court.

### I.

■ The first issue on appeal is whether the district court lacked jurisdiction to consider the motion filed by Jordan. Jordan styled his *pro se* motion as a "motion to correct illegal sentence" under Fed.R. Crim.P. 35(a). As Jordan concedes on appeal, this characterization of his motion in the district court was clearly incorrect. Although Rule 35(a) at one time provided that "[t]he court may correct an illegal sentence at any time and may correct a sentence imposed in an illegal manner within the time provided herein for the reduction of sentence," that version of Rule 35(a) is not applicable to individuals sentenced under the Sentencing Reform Act of 1984.[4]

That Jordan mislabeled his petition, however, is not fatal to his claim. Federal courts have long recognized that they have an obligation to look behind the label of a motion filed by a *pro se* inmate and determine whether the motion is, in effect, cognizable under a different remedial statu-

---

1. Pub.L. No. 98–473, 98 Stat.1987 (codified as amended in scattered sections of 18 and 28 U.S.C.).

2. Jordan filed a subsequent motion on February 16, 1989, seeking a reduction of sentence on separate grounds. This motion was denied for want of jurisdiction under Fed.R.Crim.P. 35(b).

3. Although Jordan raises two other issues on appeal, both are wholly without merit. First, he complains that the district court erred in concluding that it did not possess jurisdiction to consider Jordan's Rule 35(b) motion. *See* note 2, *supra.* Because Jordan's offense was committed after November 1, 1987, Jordan was sentenced pursuant to the Sentencing Reform Act of 1984. Among other things, this Act repealed that version of Rule 35(b) which authorized district courts to entertain timely filed motions for a discretionary reduction in sentence. *See United States v. Weaver*, 884 F.2d 549, 550 (11th Cir.1989) (per curiam).

Jordan also contends on appeal that the imposition of a special assessment under 18 U.S.C.

§ 3013(a) constitutes a violation of the Origination Clause. This claim is rejected on the basis of *United States v. Munoz–Flores*, — U.S. —, 110 S.Ct. 1964, 109 L.Ed.2d 384 (1990), and *United States v. Wilson*, 901 F.2d 1000, 1003–04 (1990).

4. Rule 35(a) was amended by the Sentencing Reform Act, Pub.L. No. 98–473, Title II, § 215(b), 98 Stat.1987, 2015 (1984), and now reads as follows:

The court shall correct a sentence that is determined on appeal under 18 U.S.C. 3742 to have been imposed in violation of law, to have been imposed as a result of an incorrect application of the sentencing guidelines, or to be unreasonable, upon remand of the case to the court—

(1) for imposition of a sentence in accord with the findings of the court of appeals; or
(2) for further sentencing proceedings if, after such proceedings, the court determines that the original sentence was incorrect.

tory framework. *See Andrews v. United States*, 373 U.S. 334, 83 S.Ct. 1236, 10 L.Ed.2d 383 (1963). In particular, federal courts have recognized that claims presented under the previous version of Rule 35(a) are also frequently cognizable under 28 U.S.C. § 2255 as well. *See, e.g., United States v. Zuleta–Molina*, 840 F.2d 157, 158 (1st Cir.1988); *United States v. Santora*, 711 F.2d 41, 42 (5th Cir.1983) (collecting cases).

Thus, the proper inquiry in this case is whether the district court was correct in treating Jordan's claim as cognizable under 28 U.S.C. § 2255. Having reviewed the applicable statutes and case law, we conclude that recognition of Jordan's claim is wholly consistent both with the statutory language of § 2255 and with existing precedent construing § 2255.

### A.

In pertinent part, 28 U.S.C. § 2255 provides that:

A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

As written, § 2255 clearly provides a statutory means by which an individual under federal sentence can obtain federal habeas corpus review of the sentence imposed. As has been emphasized by the Supreme Court, Congress enacted § 2255 "to provide in the sentencing court a remedy exactly commensurate with that which had previously been available by habeas corpus in the court of the district where the prisoner was confined." *Hill v. United States*, 368 U.S. 424, 427, 82 S.Ct. 468, 471, 7 L.Ed.2d 417 (1962). *See generally United States v. Hayman*, 342 U.S. 205, 72 S.Ct. 263, 96 L.Ed. 232 (1952). Pursuant to § 2255, individuals sentenced by a federal court can attack the sentence imposed by claiming one of four different grounds: "(1) that the sentence was imposed in violation of the Constitution or laws of the United States; (2) that the court was without jurisdiction to impose such sentence; (3) that the sentence was in excess of the maximum authorized by law; and (4) that the sentence is otherwise subject to collateral attack." *Hill*, 368 U.S. at 426–27, 82 S.Ct. at 470 (quotation omitted).

In cases arising under § 2255, we have, among other claims, entertained challenges to the constitutionality of imposing a $50.00 special assessment on an indigent defendant, *United States v. Cooper*, 870 F.2d 586 (11th Cir.1989) (per curiam), challenges to the constitutionality of imposing special parole terms, *Garcia v. United States*, 769 F.2d 697, 699–98 (11th Cir.1985) (per curiam), and challenges to the imposition of unconstitutional or illegal sentences, *Sullivan v. United States*, 485 F.2d 1352 (5th Cir.1973).[5] Additionally, and even more significantly, the very type of claim being raised by Jordan in this case was presented to the Supreme Court in *Bifulco* pursuant to 28 U.S.C. § 2255. In *Bifulco*, the petitioner was convicted of one count of violating 21 U.S.C. § 846 and was given a sentence consisting of four years imprisonment, five years of special parole and a $1000 fine. After unsuccessfully appealing his conviction, the petitioner filed a *pro se* motion pursuant to 28 U.S.C. § 2255, asserting that the statute under which he was convicted did not authorize imposition of a special parole term. On review of this claim, the Supreme Court agreed with the petitioner and ordered that the imposition of the special parole term be vacated.

Hence, it cannot be questioned that, at least prior to the enactment of the Sentencing Reform Act of 1984, the claim that Jordan is asserting was fully cognizable pursuant to 28 U.S.C. § 2255. His claim alleges both that "the sentence was im-

5. This case was decided prior to the close of business on September 30, 1981, and is binding precedent under *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981).

posed in violation of the ... laws of the United States" and that "the sentence was in excess of the maximum authorized by law."

### B.

It has been suggested, however, that the framework of the Sentencing Reform Act of 1984 alters the scope of § 2255. According to this argument, Congress, through the enactment of the Sentencing Reform Act, established for the first time a comprehensive system of review of sentences in the appellate court. *See* Pub.L. No. 98–473, § 213, 98 Stat. at 2011 (codified at 18 U.S.C. § 3742). Since Congress has now explicitly authorized the challenging of an imposed sentence on direct appeal of a criminal conviction, there is no reason, it has been contended, to allow prisoners to present legal arguments attacking their sentences via a § 2255 petition when those arguments could have been presented on direct appeal.

Such an argument, if accepted, would represent a drastic limitation on the ability of federal inmates to obtain judicial relief from an illegal sentence through federal habeas corpus. Having carefully reviewed the Sentencing Reform Act, we find no indication that Congress sought to circumscribe the ability of federal prisoners to present legal challenges pursuant to § 2255. There is nothing in the Act to suggest that Congress intended such a modification of § 2255. No changes were made to the language of § 2255, nor is there any legislative history manifesting such Congressional intent.

This conclusion is not meant to imply that the Sentencing Reform Act of 1984 did not result in significant changes in the manner in which appellate review of federal sentences could be obtained. To determine the precise scope of these changes, however, the Sentencing Reform Act of 1984 must be reviewed in context. In other words, to assess the precise displacement effect caused by the Sentencing Reform Act, we must first review the manner in which appellate review of federal sentences could be obtained prior to implementation of the Act.

Before implementation of the Act, individuals convicted of federal offenses had three primary means by which to obtain appellate review of their criminal sentences. First, defendants convicted of offenses committed before the effective date of the Act frequently challenged their sentences on direct appeal alleging that their sentences were illegal or unconstitutional, and this court not only entertained these challenges but ordered appropriate relief when necessary. *See, e.g., United States v. Alvarez–Moreno,* 874 F.2d 1402, 1414 (11th Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 1484, 108 L.Ed.2d 620 (1990); *United States v. Lail,* 814 F.2d 1529, 1529–30 (11th Cir.1987); *United States v. Rosen,* 764 F.2d 763, 765–67 (11th Cir.1985), *cert. denied,* 474 U.S. 1061, 106 S.Ct. 806, 88 L.Ed.2d 781 (1986); *United States v. Lippner,* 676 F.2d 456, 467–68 (11th Cir. 1982); *United States v. Vasquez,* 504 F.2d 555 (5th Cir.1974) (per curiam). Second, a defendant could pursue relief before the sentencing judge by filing a motion at any time during service of the sentence under the version of Fed.R.Crim.P. 35(a) then in existence. *See, e.g., United States v. Dawson,* 790 F.2d 1565 (11th Cir.1986), *cert. denied,* 484 U.S. 834, 108 S.Ct. 111, 98 L.Ed.2d 71 (1987); *United States v. Shillingford,* 586 F.2d 372 (5th Cir.1978); *United States v. Cevallos,* 538 F.2d 1122 (5th Cir.1976). And third, an individual convicted of a federal offense could initiate habeas corpus proceedings pursuant to 28 U.S.C. § 2255 and obtain review of an allegedly illegal or unconstitutional sentence in that manner. *See, e.g., Bifulco, supra; Sullivan v. United States,* 485 F.2d 1352, 1354 (5th Cir.1973); *Williams v. United States,* 385 F.2d 46 (5th Cir.1967). Each of these alternatives provided a separate and distinct means by which review of an allegedly illegal sentence could be obtained in the district court. *See Heflin v. United States,* 358 U.S. 415, 418, 79 S.Ct. 451, 453, 3 L.Ed.2d 407 (1959); *id.* at 422, 79 S.Ct. at 455 (Stewart, J., concurring). Significantly, regardless of which alternative was pur-

sued by the defendant, appellate review of the district court's sentence was available.

■ The enactment of the Sentencing Reform Act of 1984 undeniably created a fundamental change in the manner in which sentences are imposed and reviewed in the federal courts. Under the Act, judicial discretion in imposing sentences has been severely circumscribed, and, in its stead, a comprehensive set of sentencing guidelines dictate the presumptive sentence that a given defendant should serve. Through the introduction of these guidelines, Congress sought to replace the disparity that had typified the discretionary sentencing system with a sentencing system emphasizing uniformity, proportionality, and certainty of punishment. *See generally Mistretta v. United States*, 488 U.S. 361, 109 S.Ct. 647, 648–49, 102 L.Ed.2d 714 (1989).

As part of the implementation of this system, Congress realized that "[a]ppellate review of sentences is essential to assure that the guidelines are applied properly and to provide case law development of the appropriate reasons for sentencing outside the guidelines." S.Rep. No. 225, 98th Cong., 2d Sess. 158, *reprinted in* 1984 U.S. Code Cong. & Admin.News 3182, 3341. To ensure that the guidelines system operated in a manner that would provide some level of consistency in the imposition of sentences for similar individuals committing like offenses, Congress enacted a provision, 18 U.S.C. § 3742, which affords both the defendant and the federal government the opportunity to present certain challenges on direct appeal concerning the guidelines sentence imposed by the district court. In conjunction with this provision, Congress also altered the provisions of Fed.R.Crim.P. 35 and removed the district court's authority under Rule 35 to correct any illegal sentence that might have been imposed. *See United States v. Rico*, 902 F.2d 1065, 1066 (2d Cir.1990); *United States v. Cook*, 890 F.2d 672, 674 (4th Cir.1990).

Among other things, § 3742 provides that either the defendant or the federal government may challenge on direct appeal a sentence "imposed in violation of law."

18 U.S.C. §§ 3742(a)(1), 3742(b)(1). From the defendant's perspective, this represents a mere codification of a remedy available even prior to the enactment of the Sentencing Reform Act. In other words, both before and after implementation of the Sentencing Reform Act, the defendant was authorized to seek direct appellate review of an allegedly illegal sentence.

■ The fact that Congress codified a preexisting remedy, however, does not, by itself, stand for the proposition that Congress also implicitly intended to circumscribe other available, preexisting statutory remedies. It is a cardinal rule of statutory construction that implying the repeal, either in whole or by a narrowing in scope, of one statute by the passage of a subsequent statute is disfavored and should be condoned only when Congress' intent to repeal is manifest. *See, e.g., Rodriguez v. United States*, 480 U.S. 522, 523, 107 S.Ct. 1391, 1392, 94 L.Ed.2d 533 (1987) (per curiam); *United States v. United Continental Tuna Corp.*, 425 U.S. 164, 168–69, 96 S.Ct. 1319, 1323, 47 L.Ed.2d 653 (1976); *Morton v. Mancari*, 417 U.S. 535, 549–51, 94 S.Ct. 2474, 2482–83, 41 L.Ed.2d 290 (1974). "Where there are two acts upon the same subject, effect should be given to both if possible." *Posadas v. National City Bank of New York*, 296 U.S. 497, 503, 56 S.Ct. 349, 352, 80 L.Ed. 351 (1936). Only when construction of two or more provisions result in an "irreconcilable conflict" should federal courts infer an implicit legislative intent to repeal a preexisting provision. *Rodriguez*, 480 U.S. at 523–24, 107 S.Ct. at 1392 (citing *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 468, 102 S.Ct. 1883, 1890, 72 L.Ed.2d 262 (1982)); *Tennessee Valley Authority v. Hill*, 437 U.S. 153, 190, 98 S.Ct. 2279, 2290, 57 L.Ed.2d 117 (1978).

■ An examination of the differences between § 2255 and § 3742 convinces us that continued recognition of the scope of § 2255 subsequent to the enactment of § 3742 does not create such an "irreconcilable conflict." As an initial matter, we note that while Congress made changes to Rule 35 that explicitly foreclosed this route for

obtaining judicial review of an allegedly illegal sentence, Congress took no such steps toward altering the breadth of § 2255. Under accepted rules of statutory construction, it is generally presumed that Congress, in drafting legislation, is aware of well-established judicial construction of other pertinent existing statutes. *See Goodyear Atomic Corp. v. Miller,* 486 U.S. 174, 108 S.Ct. 1704, 1711–12, 100 L.Ed.2d 158 (1988); *Rodriguez,* 480 U.S. at 524–26, 107 S.Ct. at 1393. To the extent that newly enacted legislation modifies or repeals some statutes but leaves other statutes intact, the conclusion to be drawn is that Congress made a determined choice not to alter those unaffected statutes. " '[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposefully in the disparate inclusion or exclusion.' " *Rodriguez,* 480 U.S. at 525, 107 S.Ct. at 1393 (quoting *Russello v. United States,* 464 U.S. 16, 23, 104 S.Ct. 296, 300, 78 L.Ed.2d 17 (1983) (quoting *United States v. Wong Kim Bo,* 472 F.2d 720, 722 (5th Cir.1972))).

■ Invocation of this presumption is particularly appropriate in this case. There is nothing inconsistent in recognizing that Congress could logically have changed Rule 35 without altering the scope of § 2255. Although in some cases an individual could pursue either of these two avenues to obtain the relief sought, 3 C. Wright, *Federal Practice & Procedure: Criminal 2d* § 581, at 391–92 (1982), it cannot be denied that the purposes and legislative history underlying the two are wholly distinct. *See Heflin v. United States,* 358 U.S. at 422, 79 S.Ct. at 455 (Stewart, J., concurring). Viewing former Rule 35(a) and § 2255 in light of their distinct purposes, we conclude that Congress' decision to alter only the defendant's avenue of relief under Rule 35(a) when it enacted § 3742 is readily comprehensible and wholly rational.

A motion brought pursuant to former Rule 35 was viewed as a proceeding in the original criminal prosecution. *United States v. Guiterrez,* 556 F.2d 1217 (5th Cir.1977) (per curiam). Consequently, prior to enactment of the Sentencing Reform Act, a defendant could twice obtain judicial review of an imposed sentence during the original criminal prosecution—by raising a challenge on direct appeal or by raising a challenge in a motion under Rule 35(a). *See United States v. Shillingford,* 586 F.2d 372, 375 (5th Cir.1978).

On the other hand, proceedings under § 2255 are not proceedings in the original criminal prosecution; rather, the filing of a motion pursuant to § 2255 is akin to initiating an independent civil suit. *See Heflin v. United States,* 358 U.S. at 418 n. 7, 79 S.Ct. at 453 n. 7; *Ferrara v. United States,* 547 F.2d 861, 862 (5th Cir.1977); *Hutto v. United States,* 509 F.2d 132 (5th Cir.1975) (per curiam). The underlying Congressional purpose for enactment of § 2255 was to authorize relief to any person who is denied his or her liberty in violation of the Constitution or laws of the United States. Thus, in a suit brought under § 2255, the petitioner can raise any claims that could warrant habeas corpus relief. *Kaufman v. United States,* 394 U.S. 217, 221–22, 89 S.Ct. 1068, 1071, 22 L.Ed.2d 227 (1969).

Given these differences, it is understandable why Congress would have chosen to abolish former Rule 35(a) while leaving the availability of relief under § 2255 fully intact. Congress' enactment of § 3742 and simultaneous repeal of former Rule 35(a) can easily be understood as an attempt to streamline the manner in which sentencing challenges arising during the *original criminal prosecution* can be presented. By leaving § 2255 unmodified, however, Congress guaranteed that review and relief would be available to ensure that, if for some bona fide reason a defendant did not or was unable to avail himself of a direct appeal, fundamental errors could nonetheless be corrected.

### C.

■ Our holding that the Sentencing Reform Act does not prevent a federal district court from considering an allegation that a sentence is facially illegal or

unconstitutional is consistent with the legislative objectives underlying the enactment of § 2255. Congress enacted § 2255 with the intention that the statute would serve as the primary method of collateral attack on a federally imposed sentence. *McGhee v. Hanberry,* 604 F.2d 9, 10 (5th Cir.1979) (per curiam); *Lane v. Hanberry,* 601 F.2d 805, 806 (5th Cir.1979).

Prior to the enactment of § 2255, federal prisoners seeking to challenge their criminal convictions and sentences were required to initiate habeas corpus proceedings in the district of confinement. This practice created severe administrative problems—both in terms of docket management and in terms of availability of necessary documents—for those district courts which had federal prisons located within their geographic boundaries. *See generally United States v. Hayman,* 342 U.S. 205, 72 S.Ct. 263, 96 L.Ed. 232 (1952). Through the enactment of § 2255, Congress sought "to alleviate the burden of habeas corpus petitions filed by federal petitioners in the district of confinement, by providing an equally broad remedy in the convenient jurisdiction of the sentencing court." *United States v. Addonizio,* 442 U.S. 178, 185, 99 S.Ct. 2235, 2240, 60 L.Ed.2d 805 (1979).

Thus, solely motivated by concerns about how to best facilitate the processing of inmate challenges to their criminal convictions and sentences, Congress determined that these challenges should be resolved by the judge who imposed sentence. *Hayman,* 342 U.S. at 219, 72 S.Ct. at 272. As the Supreme Court has emphasized, this legislative remedy by no means was designed to impinge upon prisoners' rights to collaterally attack their convictions and sentences: "§ 2255 was intended to afford federal prisoners a remedy identical in scope to federal habeas corpus." *Davis v. United States,* 417 U.S. 333, 343, 94 S.Ct. 2298, 2304, 41 L.Ed.2d 109 (1974).

That Congress left § 2255 intact to serve as a vehicle to correct facially illegal or unconstitutional sentences does not necessarily imply that defendants may forgo their § 3742 statutory right of direct appeal without consequence. Prior case law makes evident that the relief afforded under § 2255 is not coextensive with the relief that might be obtained by taking a direct appeal. In many instances, it is quite possible that a defendant's failure to raise sentencing issues on direct appeal will result in the conclusion that the defendant procedurally defaulted the issues he or she now seeks to present. Such a conclusion would comport with those cases involving § 2255 proceedings in which federal courts have required proof of "cause and prejudice" to justify a defendant's failure to raise a particular issue on direct appeal. *See, e.g., United States v. Frady,* 456 U.S. 152, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982); *Greene v. United States,* 880 F.2d 1299, 1305 (11th Cir.1989). *But see Bifulco, supra* (granting relief on the type of claim presented here without mentioning procedural default and "cause and prejudice"); *Presnell v. Kemp,* 835 F.2d 1567, 1577 (11th Cir.1988) (suggesting that the "deliberate bypass" standard set forth in *Fay v. Noia,* 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), may still be applicable in cases in which no appeal at all is taken), *cert. denied,* 488 U.S. 1050, 109 S.Ct. 882, 102 L.Ed.2d 1004 (1989).

In this case, we need not decide whether it would be appropriate to require Jordan to demonstrate "cause and prejudice" because the government did not assert in the district court that Jordan's failure to present his claim on direct appeal should bar consideration of the merits, *see Delap v. Dugger,* 890 F.2d 285, 302 n. 20 (11th Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 2628, 110 L.Ed.2d 648 (1990); *Boykins v. Wainwright,* 737 F.2d 1539, 1545 (11th Cir.1984), *cert. denied,* 470 U.S. 1059, 105 S.Ct. 1775, 84 L.Ed.2d 834 (1985), and because, in any event, we can readily conclude that Jordan's claim has no merit.

## II.

■ Jordan was convicted of one count of violating 21 U.S.C. § 846. At the time of his offense, 21 U.S.C. § 846 provided that:

Any person who attempts or conspires to commit any offense defined in this subchapter is punishable by imprisonment or fine or both which may not exceed the maximum punishment prescribed for the offense, the commission of which was the object of the attempt or conspiracy.[6]

Pub.L. No. 91–513, Title II, § 406, 84 Stat. 1265 (Oct. 27, 1970). Relying upon *Bifulco v. United States*, 447 U.S. 381, 100 S.Ct. 2247 (1980), Jordan argues that a sentence of supervised release was not within the permissible statutory penalties for a violation of § 846.

*Bifulco* concerned whether the imposition of a special parole term was an authorized sentence under the same version of § 846. At the time *Bifulco* was decided, the statute governing the commission of the substantive offense, 21 U.S.C. § 841(a), explicitly authorized the imposition of a special parole term; 21 U.S.C. § 846, the criminal statute outlawing conspiracy to commit the substantive offense, did not. Looking to three factors—"the language and structure, legislative history, and motivating policies of the [Comprehensive Drug Abuse Prevention and Control] Act [of 1970]", *id.* at 387, 100 S.Ct. at 2252—and applying the rule of lenity, the Court concluded that because 21 U.S.C. § 846 did not explicitly authorize the imposition of special parole terms as punishment for those convicted of conspiracy, no special parole terms could be imposed.

Pursuant to the Anti–Drug Abuse Act of 1986, Pub.L. No. 99–570, 100 Stat. 3207,

Congress replaced the special parole terms referenced as permissible punishment for violations of 21 U.S.C. § 841 with terms of "supervised release." *See generally United States v. Smith*, 840 F.2d 886, 889–90 (11th Cir.), *cert. denied*, 488 U.S. 859, 109 S.Ct. 154, 102 L.Ed.2d 125 (1988). The effective date for this change was November 1, 1987, set to coincide with the institution of the sentencing guidelines.[7] *Id.* at 889–90. No comparable modifications were made to 21 U.S.C. § 846.

Seizing upon the *Smith* panel's observation that "special parole" and "supervised release" serve the same basic function and that the only real difference between the two is "who has the responsibility to monitor the defendant after confinement," *see id.* at 890 n. 3, Jordan argues that the same analysis applied in *Bifulco* to invalidate the imposition of special parole for a § 846 conviction should also apply to invalidate the imposition of supervised release. Two circuits, without so holding, have intimated their agreement with this conclusion. *See United States v. Molina–Uribe*, 853 F.2d 1193, 1197–98 (5th Cir.1988) ("The *Bifulco* rationale, it seems should also preclude terms of supervised release from being carried over to § 846. We agree ... that the post-incarceration monitoring device referred to as "special parole" and that referred to as "supervised release" present only a distinction without a difference") (footnote and citation omitted);[8] *United States v. Latham*, 874 F.2d 852, 864 (1st Cir.1989) ("The statute governing Count I,

---

**6.** This statute was amended pursuant to the Asset Forfeiture Amendments Act of 1988, Pub.L. No. 100–690, Title VI, § 6470(a), 102 Stat. 4377, to read that:

> Any person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

The effective date of this amendment, however, was November 18, 1988. Since this effective date is after the date of Jordan's criminal activities, we are concerned with the pre-amendment version of 21 U.S.C. § 846.

**7.** There is some dispute among the circuits as to the effective date of when "supervised release" supplanted "special parole" for violations

of the substantive offenses set forth in 21 U.S.C. § 841. *See United States v. Gozlon–Peretz*, 894 F.2d 1402, 1404 (3d Cir.1990) (discussing the split in the circuits), *cert. granted*, — U.S. —, 110 S.Ct. 3212, 110 L.Ed.2d 660 (1990). For our purposes, however, this split is irrelevant; the offense took place in late December of 1987, and all circuits agree that the "supervised release" amendments were in place by this time.

**8.** *Molina–Uribe* arose in the context of what information must be given during the Rule 11 colloquy surrounding acceptance of a guilty plea. The court did not decide the *Bifulco* issue because the offense occurred on December 31, 1986. This date was prior to the effective date for imposition of supervised release. 853 F.2d at 1198.

21 U.S.C. § 846, however, does not authorize the imposition of supervised release. *See Bifulco v. United States*, 447 U.S. 381, 100 S.Ct. 2247, 65 L.Ed.2d 205 (1980). The government agrees with the defendant that this part of the sentence is invalid.").[9]

There is, however, one important difference between this case and *Bifulco:* namely, the enactment of 18 U.S.C. § 3583(a). This statute, which was enacted as part of the Sentencing Reform Act of 1984, became effective on November 1, 1987.[10] In pertinent part, § 3583 provides that:

> (a) **In general.**—The court, in imposing a sentence to a term of imprisonment for a felony or a misdemeanor, may include as a part of the sentence a requirement that the defendant be placed on a term of supervised release after imprisonment, except that the court shall include as a part of the sentence a requirement that the defendant be placed on a term of supervised release if such a term is required by statute.

It is the existence of this statute that distinguishes this case from *Bifulco.* Pursuant to this statute, a federal district court has the power to impose a term of supervised release as part of any criminal sentence. This legislation provides the explicit authority for an additional sentencing option to the district court which *Bifulco* found lacking.[11] Reading 21 U.S.C. § 846 *in pari materia* with 18 U.S.C. § 3583(a), we conclude that the district court properly possessed the statutory authority to impose a term of supervised release. *Accord United States v. Van Nymegen*, 910 F.2d 164 (5th Cir.1990).

### III.

To summarize, we conclude that the district court properly possessed jurisdiction under § 2255 to render a decision on the merits of Jordan's motion to correct illegal sentence. Furthermore, we find that *Bifulco* does not mandate reversal of the district court on the merits; imposition of a term of supervised release was authorized by 18 U.S.C. § 3583(a).

AFFIRMED.

---

**9.** Although this quote clearly suggests that the First Circuit has adopted the *Bifulco* analysis, the determination is not without some question. The offense in *Latham* took place on April 16, 1987, *see id.,* 874 F.2d at 854, which is before the date that the changeover from "special parole" to "supervised release" took place. Moreover, and more importantly, as of this date, 18 U.S.C. § 3583, had not yet taken effect. *See infra.*

**10.** Sentencing Reform Act of 1984, Pub.L. No. 98–473, Title II, § 235, 98 Stat.1987, 2031, amended by Sentencing Reform Amendments Act of 1985, Pub.L. No. 99–217, § 4, 99 Stat. 1728.

**11.** We note that in *Bifulco,* the Court concluded its opinion by stating: "It is for Congress, and not this Court, to enact words that will produce the result the government seeks in this case." 447 U.S. at 401, 100 S.Ct. at 2259.