In re ALABAMA STATE FAIR
AUTHORITY, Debtor.

Max C. POPE, Sr., Plaintiff–Trustee,

v.

ALABAMA POWER CO., Defendant.

Bankruptcy No. 94–03695–BGC–9.
Adversary No. 96–00558.

United States Bankruptcy Court,
N.D. Alabama,
Southern Division.

Sept. 23, 1997.

John Lavette, Birmingham, AL, for Debtor.

Charles R. Johanson, Birmingham, AL, for Plaintiff–Trustee.

Jesse Vogtle, Jr., Birmingham, AL, for Defendant.

### Memorandum Opinion on the Defendant's *Motion to Dismiss* Chapter 9 Adversary Proceeding

BENJAMIN COHEN, Bankruptcy Judge.

## I. Background

The trustee filed the pending complaint in this Chapter 9 case on December 16, 1996 contending that payments of $141,268.00 made to the defendant by the debtor constitute preference payments under 11 U.S.C. § 547. The defendant contends that the trustee's complaint was filed beyond the two-year statute of limitations contained in 11 U.S.C. § 546 and filed the pending *Motion to Dismiss* on January 24, 1997.

The pertinent part of the applicable version of 11 U.S.C. § 546 reads:

Limitations on Avoiding Powers

(a) An action or proceeding under section 544, 545, 547, 548, or 553 of this title may not be commenced after the earlier of—

   (1) two years after the appointment of a trustee under section 702, 1104, 1163, 1302, or 1202 of this title; or

   (2) the time the case is closed or dismissed.

11 U.S.C. § 546(a)(1)(1994) (prior to 1994 amendment).[1]

## II. Issues

The issues this Court has considered are:

1. Does the two-year statute of limitation in Bankruptcy Code section 546(a)(1), as that limitation existed when the pending case was filed, apply to Chapter 9 trustees?

2. If the limitation applies, from what date would the two-year period begin?

---

1. 11 U.S.C. § 546(a)(1) was amended in 1994 by the Bankruptcy Reform Act of 1994, Pub.L. No. 103–394, § 216, 108 Stat. 4106, 4126–4127 (1994). All parties agree, however, as does this Court, that the pre-amendment version of section 546 applies to this case. All references to the section, unless noted, are to the pre-amendment version.

### III. Defendant's Argument

The defendant argues that the two-year time period applies in this case and that it began to run on the day the debtor filed its Chapter 11 case. The argument has four dependant parts.

First, the defendant argues that as a general rule, the limitation period begins to run when a chapter 11 case is filed because the "after the appointment of a trustee" point-in-time in section 546, includes the point-in-time of the creation of other entities that may at some time exercise the avoiding powers conferred on a bankruptcy trustee. That point-in-time includes the creation of a Chapter 11 debtor in possession when a Chapter 11 bankruptcy case is filed.

Second, the defendant argues that when such entities come into existence, that their actions are, or at least should be, limited by section 546 from the dates the cases from which those entities arose were filed, such as the point-in-time a Chapter 11 bankruptcy petition is filed and a Chapter 11 debtor in possession is created.

Third, the defendant argues that because this case was filed initially as a Chapter 11 case, that the section 546 limitation period would apply at the time of the creation of the Chapter 11 debtor in possession (as the equivalent of an "appointment of a trustee" under section 546) and would have begun to run on the date the Chapter 11 case was filed.

Fourth, the defendant concludes that because the pending complaint was filed on December 16, 1996, more than two years after the June 24, 1994 Chapter 11 filing date, the complaint was not filed timely.[2]

### IV. Findings of Fact

The records of this Court contain all pertinent facts. Those facts include certain events and the dates those events occurred. They are:

1. June 24, 1994     The debtor filed a Chapter 11 bankruptcy petition.

2. June 23, 1995     The Chapter 11 case was converted to Chapter 9.

3. July 14, 1995     An order on notice of the commencement of a case under Chapter 9 was entered.

4. July 18, 1995     A trustee was appointed pursuant to 11 U.S.C. § 926.

5. April 4, 1996     The order appointing the trustee was set aside as to the appointee and another individual was appointed.

6. December 16, 1996   The trustee filed the pending complaint against the movant.

### V. Conclusions of Law

While the debtor's argument has substantial legal support, see note 3 below, this Court finds, independent of that support and without specifically addressing the argument, that the limitation provision of 11 U.S.C. § 546 does not apply to Chapter 9 trustees, but that if it did, the period would not begin to run until after the appointment of a trustee.[3]

---

2. The debtor filed the Chapter 11 case on June 24, 1994 but the case was converted to Chapter 9 on June 23, 1995. There is general agreement however, that the conversion of a case does not change the filing date of the petition or the commencement of the case unless the exceptions listed in 11 U.S.C. § 348(b) or (c) apply. See *Palladino v. United States (In re Palladino)*, A.P. No. 95–0081 BKC–PGH–A, 1995 WL 723107 (Bankr.S.D.Fla. Sept. 21, 1995) citing *British Aviation Ins. Co. v. Susan Menut (In re State Airlines, Inc.)*, 873 F.2d 264, 268 (1 1th Cir. 1989). Those exceptions do not apply here.

3. Decisions of several courts of appeals support the defendant's argument. These include, *Mosier v. Kroger Company (In re IRFM, Inc.)*, 65 F.3d 778 (9th Cir.1995); *U.S. Brass & Copper Company v. Caplan (In re Century Brass Products, Inc.)*, 22 F.3d 37 (2d Cir.1994); *Construction Management Services, Inc. v. Manufacturers Hanover Trust Company (In re Coastal Group, Inc.)*, 13 F.3d 81 (3d Cir.1994); *Upgrade Corporation v. Government Technology Services Inc. (In re Softwaire Centre International Inc.)*, 994 F.2d 682 (9th Cir.1993); and *Zilkha Energy Company v. Leighton*, 920 F.2d 1520 (10th Cir.1990). For purposes of the conclusions reached in this opinion, this Court does not discount those cases but reaches its legal conclusions independent of those decisions and the arguments that gave rise to them. None of those decisions, or even the single one to the contrary, see *Maurice Sporting Goods, Incorporated v. Maxway Corporation (In re Corporation)*, 27 F.3d 980 (4th Cir.1994), were reached in a Chapter 9 case. This Court believes that fact to be significant and discusses that issue in this opinion; however, in regard to the deci-

## A. Application to Chapter 9 Trustees

Most Bankruptcy Code provisions do not apply in Chapter 9 cases, but those that do are listed in 11 U.S.C. § 103(e) and 11 U.S.C. § 901. Included there is the general provision that the limitation provision of section 546 applies in Chapter 9 cases. That general application is however, subject to the specific provisions of 11 U.S.C. § 902, in combination with 11 U.S.C. § 926, and 11 U.S.C. § 546.

Section 902(5) reads, " 'trustee', when used in a section that is made applicable in a case under this chapter by section 103(e) or 901 of this title, *means debtor, except as provided in section 926* of this title." 11 U.S.C. § 902 (emphasis added).

The clarifying language in section 926(a) reads, "If the *debtor* refuses to pursue a cause of action under section 544, 545, 547, 548, 549(a), or 550 of this title, then on request of a creditor, the court may appoint a *trustee* to pursue such cause of action." 11 U.S.C. § 926 (emphasis added).

Section 546(a)(1) reads, "An action or proceeding under section 544, 545, 547, 548, or 543 of this title may not be commenced after the earlier of ... two years after the appointment of a trustee under section *702, 1104, 1163, 1302 or 1202....*" 11 U.S.C. § 546 (1994) (prior to 1994 amendment) (emphasis added).

The above definitions demonstrate that section 546(a)(1) excludes Chapter 9 trustees from operation of its limitation provision and that section 926(a) excludes trustees from prosecution of certain actions unless a debtor refuses to pursue those actions. This Court believes that the creation of these exclusive relationships was deliberate. While there may be some connection between Chapter 9 *debtors* and sections 544, 545, 547 or 548, there is none between Chapter 9 *trustees* and those sections. The history of Chapter 9 trustees explains.

Prior to enactment of the Bankruptcy Code, both the House and Senate versions of what was to become the 1979 Bankruptcy Code were based on Bankruptcy Act section 85(h), the section applying avoiding powers to then Chapter IX cases. Those versions did not however agree on whether a Chapter 9 trustee could be appointed for purposes of prosecuting preference actions. An analysis of this conflict begins with Section 85(h). That section reads:

> (h) Avoiding Powers.—Sections 60a, 60c, 67a, 67d, 70c, 70e(1), and 70e(2), and the first three sentences of section 60b shall apply in cases under this chapter as though the petitioner were the bankrupt, debtor, or trustee. If the petitioner refuses to pursue a cause of action under a section or sentence made applicable to this chapter by this subsection, the court may, upon the application of any creditor, appoint a trustee to pursue such cause of action.

Chandler Act (Bankruptcy Act, Amendments of 1938), ch. 541, § 85, as added April 8, 1976, P.L. 94–260, 90 Stat. 315, 319 (1976) (repealed 1979).

Section 85(h) contained both some avoiding powers and the authority of a court to appoint a trustee to exercise those powers, but when the section was considered for inclusion in the soon to be Bankruptcy Code, while both House and Senate versions contained avoiding powers, only the Senate version contained the trustee appointment provision. A comparison of the legislative histories of the differing bills explains. The House legislative history of Code section 901 reads:

> Section 901 makes applicable appropriate provisions of other chapters of proposed title 11. The general rule set out in section 103(e) is that only the provisions of chapters 1 and 9 apply in a chapter 9 case. Section 901 is the exception, and specifies other provisions that do apply. They are as follows:
>
> . . .

---

sions, this Court respectfully disagrees with the Circuit Court majority and accepts the reasoning and holding of the Court of Appeals for the Fourth Circuit. As that court notes, at the time *Maxway* was published, based on the plain language of the section, "the overwhelming majority of bankruptcy and district courts have concluded that the two-year statute of limitations begins to run only upon the appointment of one of the trustees specified in § 546(a)(1)." *Id.* at 982. The basis of this Court's position is discussed in notes 10 and 12 below.

§ 547. Preferences. Incorporation of section 547 will permit the debtor to recover preferences. This power will be used primarily when those who have the preferences have been replaced by new municipal officers or when creditors coerced preferential payments. Unlike Bankruptcy Act § 85(h), *the section does not permit the appointment of a trustee* for the purpose of pursing preferences. Moreover, this bill does not incorporate the other avoiding powers of a trustee for chapter 9, found in current section 85(h).

H.R.Rep. No. 595, 95th Cong., 2d Sess. 388, 396 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6349, 6352 (emphasis added).

The Senate legislative history to section 926 reads:

This section [11 USC § 928 as proposed in S. 2266] *adopts current section 85(h) which provides for a trustee to be appointed for the purpose of pursuing an action under an avoiding power,* if the debtor refuses to do so. This section is necessary because a municipality might, by reason of political pressure or desire for future good relations with a particular creditor or class of creditors, make payments to such creditors in the days preceding the petition to the detriment of all other creditors. No change in the elected officials of such a city would automatically occur upon filing of the petition, and it might be very awkward for those same officials to turn around and demand the return of the payments following the filing of the petition. Hence, the need for a trustee for such purpose.

The general avoiding powers are incorporated by reference in section 901 and are broader than under current law. Preferences, fraudulent conveyances, and other kinds of transfers will thus be voidable.

S.Rep. No. 989, 95th Cong., 2d Sess. 111 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5897 (emphasis added).

Section 926 of the House amendment is derived from section 928 of the Senate bill. The provision enables creditors to request the court to appoint a trustee to pursue avoiding powers if the debtor refuses to exercise those powers. *Section 901 of the House amendment makes a corresponding change to incorporate avoiding powers included in the Senate amendment. but excluded from the House bill.*

124 Cong. Rec. 11047, 11100 (1978) (emphasis added).

Apparently all agreed that if municipal officers were not removed after the filing of a Chapter IX case (an assumption the House version seemed to have made in excluding the appointment of a trustee) then a trustee may very well be necessary where the same officials that made the preference payments are left to prosecute actions to recover those payments. In what must have been a compromise, the appointment of section 926 trustees was included in the Code.

Clearly at the time, Congress was aware of the necessity of allowing preference litigation in Chapter 9 cases and was aware of the very specific issues associated with the appointment of Chapter 9 trustees. Not only did Congress consider whether the general provisions of avoiding preferences should be included for Chapter 9 cases, but Congress considered also whether the specific provision of the Act allowing a trustee to be appointed in Chapter 9 cases should be included. The result of these considerations was the Bankruptcy Code separation of the two provisions of section 85(h) and their current separation in Chapter 9. It was, as suggested above, deliberate. When Congress adopted the provisions of section 85(h) for the Code, it did so in two distinct sections of Chapter 9. Section 901 adopted *general* avoiding powers. Section 926, by way of section 902, adopted the *specific* trustee appointment provision, allowing for appointments only for special and specific purposes.

This apparent special status, a status that excluded section 926 trustees from the limitation provision of section 546 in 1979, unlike trustees appointed under sections 702, 1104, 1163 and 1302, was reinforced in 1994.[4] In 1994, Congress amended section 546 to in-

---

4. Appointment of a Chapter 12 trustee under 11 U.S.C. § 1202 is included in the section 546 limitation but that section is not included here because Chapter 12 trustees did not exist at the time of the adoption of the Bankruptcy Code.

clude the section's application to Chapter 11 *debtors*. This was accomplished by allowing the limitation to begin to run "2 years after the entry of the order for relief," a provision applicable to non-trustee entities and one that begins to expire from the date a Chapter 11 case is filed and the date a debtor in possession is created.[5] But again, although Congress had the opportunity to amend section 546 to include section 926, Chapter 9 trustees, it did not. The legislative history of the limited change in section 546 is telling. It reads, "Adoption of this change is not intended to create any negative inference or implication regarding the status of current law or interpretations of section 546(a)(1)." 140 Cong. Rec. E2204 (daily ed. October 8, 1994) (statements of Rep. Brooks).

There was no connection between section 546 and section 926 trustees when the 1979 Bankruptcy Code was adopted and none has been created since. For this Court to create a link now, or even to assume that there is a connection, where neither the statute nor the legislative history remotely supports such a link, would be far reaching. In 1979 and in every act thereafter, Congress imposed the limitation provisions of section 546 on trustees appointed under sections 702, 1104, 1163, 1302 and 1202. Not 926. This Court cannot conclude that in 1979 when Congress established the heretofore non-existing two-year statute of limitation on prosecution of preference actions, and provided that this limitation would apply to trustees appointed under sections 702, 1104, 1163, and 1302, or that in 1994 when Congress revisited that issue, that Congress really meant to include trustees appointed under section 926. Such a conclusion would be baseless. In fact, the opposite is true. At the same time the two houses of Congress debated whether the Bankruptcy Act provision that authorized a Court to appoint a chapter 9 trustee to prosecute preference actions should be included in the Bankruptcy Code legislation, they included in the same legislation a provision limiting a Chapter 7, 11 or 13 trustee's time for prosecuting the same actions; but did not apply the same limitation to Chapter 9 trustees, although those Chapter 9 trustees were given, *in the same legislation,* the *same powers* as the other trustees to prosecute the *same preference actions.* These events are significant. As Circuit Judge Stanley F. Birch, Jr. wrote In *Haas v. Internal Revenue Service (In re Haas),* 48 F.3d 1153, 1156–1157 (11th Cir. 1995):

> Where Congress knows how to say something but chooses not to, its silence is controlling. *BFP v. Resolution Trust Corp.,* 511 U.S. 531, 537, 114 S.Ct. 1757, 1761, 128 L.Ed.2d 556 (1994)(" *'[I]t is generally presumed that Congress acts intentionally and purposely when it includes particular language in one section of a statute but omits it in another,'* and that presumption is even stronger when the omission entails the replacement of standard legal terminology with a neologism.") (citation omitted) (quoting *Chicago v. Environmental Defense Fund,* 511 U.S. 328, 337–39, 114 S.Ct. 1588, 1593, 128 L.Ed.2d 302 (1994)); *United States v. Jordan,* 915 F.2d 622, 628 (11th Cir.1990) ( " ' *"[W]here Congress includes particular language in one section 'of a statute but omits it in another section of the same Act. it is generally presumed that Congress acts intentionally and purposefully in the disparate inclusion or exclusion."* ' " (quoting *Rodriguez v. United States,* 480 U.S. 522, 525, 107 S.Ct. 1391, 1393, 94 L.Ed.2d 533 (1987) (per curiam))), *cert. denied,* 499 U.S. 979, 111 S.Ct. 1629, 113 L.Ed.2d 725 (1991).

*Id.* (emphasis added).

If the section 546 limitation period does not apply to Chapter 9 trustees, the trustee's

---

5. The current version of section 546 reads:
   (A) An action or proceeding under section 544, 545, 547, 548, or 553 of this title may not be commenced after the earlier of—
   (1) the later of—
   (A) 2 years after the entry of the order for relief; or

(B) 1 year after the appointment or election of the first trustee under section 702, 1104, 1163, 1202, or 1302 of this title if such appointment or such election occurs before the expiration of the period specified in subparagraph (A); or
   (2) the time the case is closed or dismissed.

action is not barred and may go forward.[6]

## B. Beginning Date as to Chapter 9 Trustees

If the section 546 limitation period applies to Chapter 9 trustees, this Court finds that it applies only after the dates of the trustees' appointments.[7] The defendant disagrees and argues that the section 546 limitation period ended on June 23, 1996, two years after the filing of the pending case. The defendant bases its argument, as discussed above, on those cases that have held that Chapter 11 debtors in possession are trustees for purposes of calculation of the section 546 two-year period and thus the time period begins to run from the date of filing of the Chapter 11 case, that is the date on which a debtor in possession is created. See note 3 above.

If the defendant's argument has merit, it does so only in the framework of *continuously existing* Chapter 11 cases where section 1107 allows for the substitution of Chapter 11 debtors in possession for trustees in practically all situations, including section 547 preference actions that are restricted by section 546. The argument is not, however, appropriate in this Chapter 9 case where a different latitude of substitution exists. Sec-

tion 902 allows for the substitution of a "debtor" for a "trustee" in any Code section that applies in a Chapter 9 case, *except* in section 547 and related matters.[8] For those matters, section 902 forbids the substitution of "debtor" for "trustee" by allowing the substitution in *every* instance, "except as provided in section 926...." 11 U.S.C. § 902. Section 926 is, of course, the section that allows for the appointment of a trustee to prosecute a section 547 action.[9] If the defendant reasons that the statute runs from filing because a Chapter 11 debtor-in possession may be substituted for a trustee, that reasoning can not apply here. A Chapter 9 debtor may not, under any circumstance, be substituted for a Chapter 9, section 926 trustee.

The difference in the appropriateness of the defendant's argument is important. Section 926 reads, "If a *debtor refuses to pursue a cause of action under section* ... *547* [the preference type action pending before this Court] ... the Court may appoint a trustee to pursue such cause of action." 11 U.S.C. § 926(a) (emphasis and parenthetical added). Certainly, if a trustee is appointed *because a debtor has refused to pursue a preference action,* the appointed trustee cannot be sad-

U.S.C. § 546.

**6.** The defendant would have the Court not reach the issue of whether section 546 applies to Chapter 9 trustees because the defendant contends that because this case was filed originally as a Chapter 11 case that the limitation period of section 546 began to run long before the case was converted to Chapter 9. That contention is discussed within the remaining portion of this opinion.

**7.** This Court believes that this is especially true with appointments that occur following conversion from Chapter 11 to Chapter 9 where the public policy considerations of Chapter 9 have not existed in Chapter 11.

**8.** The pertinent part of section 902 reads, "'trustee', when used in a section that is made applicable in a case under this chapter by section 103(e) or 901 of this title, means debtor except as provided in section 926 of this title." 11 U.S.C. § 902(5).

**9.** The pertinent part of section 926 reads, "If the *debtor* refuses to pursue a cause of action under section 544, 545, 547, 548, 549(a), or 550 of this title, then on request of a creditor, the court may appoint a *trustee* to pursue such cause of action." 11 U.S.C. § 926 (emphasis added).

The defendant argues that, "The exception in § 926 has no bearing on when the statute of limitations commences under § 546." Alabama Power Company's Brief in Support of Motion to Dismiss at 7. Section 902 defines "trustee" for purposes of all Code sections that apply to Chapter 9 cases. That definition, by way of sections 103(e) and 901, includes sections 546 and 547 and provides that in any of the sections of the Bankruptcy Code that apply to Chapter 9, "trustee" can mean "debtor," *"except as provided in section 926...."* 11 U.S.C. § 902 (emphasis added). The trustee appointed in this proceeding could have been appointed only pursuant to section 926 and it is section 926 only that allows the prosecution of a section 547 action in a Chapter 9 case. How can the specific section 902 exclusion of the substitution of "debtor" for "trustee" in the prosecution of section 547 actions (by way of section 926) not have a bearing on the section 546 statute of limitations applicable to section 547? If a debtor cannot be a trustee under section 926, the section allowing the appointment of a trustee for section 547 purposes, how then can a debtor be a trustee for prosecution of a section 547 action for purposes of calculation of the statute of limitations contained in section 546?

dled with time restraints that would be imposed because a debtor may have refused to pursue an action for a time period long enough to evoke the restraints. There are no similar restrictions in Chapter 11 cases. The requirement that a "debtor has refused to pursue a preference action" is mandatory in Chapter 9 and would be eviscerated if a subsequently appointed trustee were penalized where the circumstances that caused the appointment were the same circumstances that caused the statute of limitations to expire.

A Chapter 9 debtor may prosecute a section 547 action and the argument could be made that the section 546 period begins to run, for a Chapter 9 debtor, when the Chapter 9 case is filed. This of course would be the same argument made for a Chapter 11 case. The difference comes where trustees are subsequently appointed. In a Chapter 11 case, the argument is still viable. In a Chapter 9 case it is not. Neither this Chapter 9 debtor, nor any other Chapter 9 debtor,

can be placed in the same situation as a specially appointed Chapter 9 trustee, the later being appointed only because of the former's recalcitrance. Section 902 does not allow such substitution and in regards to section 547 actions, Chapter 9 debtors and Chapter 9 trustees are mutually exclusive. A Chapter 9 trustee may be appointed to prosecute section 547 actions in one circumstance and one circumstance only, that is after a Chapter 9 debtor has refused to prosecute such actions. A Chapter 9 trustee appointed under section 926 after the refusal of a debtor to prosecute has no function other than to prosecute the rejected actions. Surely when this occurs, whatever function a Chapter 9 debtor had in this regard is lost, and any relationship the Chapter 9 debtor has with a pre-conversion Chapter 11 case, including the fact that the same Chapter 9 debtor was once the Chapter 11 debtor in possession, must be disregarded.[10]

Consequently, the Court finds that, if the limitation period in section 546 applies to

---

**10.** To place the restrictions the defendant seeks to place on this Chapter 9 trustee would not be equitable. The defendant argues that even if a Chapter 9 debtor holds some special class, that this debtor does not because this case was filed originally as a Chapter 11 case, and as such the limitation period began when *that* case was filed, that is, when the now Chapter 9 debtor was a Chapter 11 debtor-in-possession. If this argument were accepted, not only would a recalcitrant Chapter 9 debtor, a theoretical guardian of the public's trust, be rewarded for refusing to file preference actions but it would also be rewarded for a mistaken filing. Public policy considerations associated with Chapter 9 cases weigh heavily against the defendant's position. A discussion of the policies behind Chapter 9 cases in the *Case Management Manual for United States Bankruptcy Judges*, Federal Judicial Center, 1995 with case annotations at 123–124, a discussion adapted substantially from a manuscript prepared by the Honorable Timothy Mahoney, Joan K. Kordik, and Robert F. Craig for the Federal Judicial Center, reads:

The purpose of chapter 9 is to allow a municipality "to continue operating while it adjusts or refinances creditor claims with minimum (and in many cases, no) loss to its creditors." H.R.Rep. No. 595, 95th Cong., 1st Sess. 263 (1977). A "municipality" is defined in 11 U.S.C. § 101 as the "political subdivision or public agency or instrumentality of a State." The definition of municipality is broad—it includes such entities as counties, cities, townships, public improvement districts (e.g., sewer, paving, and sanitary districts), school districts, and revenue-produc-

ing bodies that provide services compensated by users rather than by general taxes (e.g., bridge authorities). See 4 Lawrence P. King et al., Collier on Bankruptcy ¶ 900.03 (15th ed.1992).

The general policy underlying chapter 9 is the same as that underlying chapter 11, that is, to give the debtor a breathing spell from debt collection efforts so that it can seek to work out a repayment plan with its creditors. H.R.Rep. No. 595, 95th Cong., 1st Sess. 263 (1977). Thus, the procedural and substantive aspects of chapter 9 resemble chapter 11 in many respects. Significant differences from chapter 11 do exist, however, primarily because of the status of the chapter 9 debtor as a state governmental or quasi-governmental entity and the sovereignty interests of the states under the Tenth Amendment to the United States Constitution. See *Fry v. United States*, 421 U.S. 542, 547 n. 7, 95 S.Ct. 1792, 1795 n. 7, 44 L.Ed.2d 363 (1975) ("The [Tenth] Amendment expressly declares the constitutional policy that Congress may not exercise power in a fashion that impairs the States' integrity or their ability to function effectively in a federal system."). See also *National League of Cities v. Usery*, 426 U.S. 833, 842–52, 96 S.Ct. 2465, 2470–74, 49 L.Ed.2d 245 (1976); *In re City of Bridgeport*, 128 B.R. 688 (Bankr.D.Conn.1991). Moreover, chapter 9 debtors generally are not business enterprises operating for profit and there is a stronger public interest in their continued operation. These differences impose some limitations on the court's powers in dealing with a municipal debt adjustment and

Chapter 9 trustees, the period must begin to run as section 546 directs, that is two years after the appointment of a trustee, in this case that beginning date is July 19, 1995, the day following the date of appointment of the first trustee. See Fed.R.Bankr.P. 9006. The period would then end on or near July 17, 1997, a date beyond the date the trustee filed his complaint in this proceeding.[11]

## IV. Conclusion

For the reasons expressed above, the Court finds that the defendant's *Motion to* *Dismiss* is due to be denied.[12] A separate order will be entered contemporaneously with this Memorandum Opinion.[13]

---

mandate some modifications of the standards governing the proposal and confirmation of a plan. H.R.Rep. No. 595, 95th Cong., 1st Sess. 263 (1977).

No trustee was appointed during the Chapter 11 portion of this case. The trustee appointed in this case was appointed as a Chapter 9 trustee, and must be judged in that context. While the original dates of filing may not change with a conversion from Chapter 11 to Chapter 9 (see note 2 above) the character and nature of the debtor changes drastically and as a result any analysis of action taken after that change must consider the impact, and importance of, the change.

11. Neither this defendant nor any in related proceedings (particularly those sued *on* July 17, 1997) has argued that the two-year period, if it does begin to run after the date of appointment of the first trustee, expired before July 17, 1997. And this Court has not considered the meaning of the phrase "two years" where one of those years happens to be a leap year.

12. If the pre-amendment version of section 546 has any general application to this Chapter 9 case, whether during the time this case was operating as a Chapter 11 case or subsequently during its pre-trustee Chapter 9 period, this Court agrees with the courts that have held that the limitation found in the section applies only from the date of appointment of an actual trustee and not from the date of filing of a case. As noted above, this Court agrees with the reasoning and holding of *Maurice Sporting Goods, Incorporated v. Maxway Corporation (In re Maxway Corporation)*, 27 F.3d 980 (4th Cir.1994). In addition, this Court agrees with the opinions from courts in this District that have held that the period begins to run from the date of appointment of the trustee. These include: *Compass Bank v. Reynolds (In re Donald, Inc.)*, No. CV95–AR–2650–S, 1996 WL 673618 (N.D.Ala. Sept. 16, 1996) and *Pope v. McPherson Oil Co. (In re Apex Coal Corp.)*, No. 92–05776–TOM–7 (Bankr.N.D.Ala. Sept. 3, 1996).

This Court's position is of course, contrary to those that accept the argument that the time period must begin to run from the date a Chapter 11 case is filed if any statute of limitation is to apply to a Chapter 11 debtor-in-possession. These courts reason that not to accept that argument would allow a Chapter 11 debtor in possession to operate for years without the limitations. See *Feltman v. GMAC (In re TUSA Florida, Inc.)*, 186 B.R. 542 (Bankr.S.D.Fla.1995). This Court cannot disregard that position but at the same time this Court cannot disregard the plain language of the pre-amended version of 11 U.S.C. § 546(a)(1) which reads, "after the appointment of a trustee." Certainly courts must resolve statutory ambiguities or statutory conflicts in a practical manner, but to accept the argument that Congress intended that the section 546 statute of limitation apply to Chapter 11 debtors in possession, where Congress had many opportunities to say so but did not until the 1994 amendment to section 546, would have this Court creating law where Congress chose not to act until 1994. As quoted above, the legislative history to the 1994 amendment to section 546 specifically said, *"Adoption of this change is not intended to create any negative inference or implication regarding the status of current law or interpretations of section § 46(a)(1)."* 140 Cong. Rec. E2204 (daily ed. October 8, 1994) (statements of Rep. Brooks) (emphasis added).

This Court's "plain meaning" position may not however be "plain" to all courts. Interestingly, and for legitimate reasons, the court in *Feltman v. GMAC (In re TUSA Florida, Inc.)*, in taking a "plain meaning" position opposite from the one this Court accepts, concludes its discussion of the issue with the phrase, "However, the Court cannot ignore the plain meaning of § 546(a) and its relation to other provisions of the Bankruptcy Code." *Id.* at 546. To debate this issue and whether Congress, in the 1994 amendments, was correcting what it recognized as an error in section 546 or whether it was simply clarifying what it had intended all along, is fruitless. This Court believes that application of different "plain language" interpretations of section 546 can produce both different and reasonable results. Representative Brooks' above-quoted explanatory statement appears to confirm that belief.

13. Separate orders will also be entered, based on this memorandum opinion, in all related adver-

sary proceedings, where similar motions to dismiss have been filed. These include: Max C. Pope, Sr. v. Water Works & Sewer Board of Birmingham, No. 97–00174 (filed by the Water Works & Sewer Board of Birmingham); Max C. Pope, Sr. v. Regions Bank, No. 97–00182 (filed by Regions Bank); Max C. Pope, Sr. v. Ballard Covert Group, et al., No. 97–00345 (where six motions were filed—one filed by Ballard Covert Group; one filed by WATV; one filed by Birmingham World; a joint motion filed by *The Birmingham News* and WVTM–NBC; one filed by WTTO, Inc.; a joint motion filed by WZZK and WODL TV; and one filed by WENN–FM); and Max C. Pope, Sr., v. Mary Lu House, No. 97–00346 (filed by Mary Lu House).