**UNITED STATES of America, Appellee,**

v.

**Roger LUSSIER, Defendant–Appellant.**

**No. 354, Docket 96–1110.**

United States Court of Appeals,
Second Circuit.

Argued Oct. 17, 1996.

Decided Jan. 9, 1997.

John L. Pacht, Burlington, VT (Robert W. Katims, Hoff, Curtis, Pacht, Cassidy & Frame, Burlington, VT, on the brief), for defendant-appellant.

David V. Kirby, Acting U.S. Atty. (Paul J. Van de Graaf, James J. Gelber, Asst. U.S. Attys., Burlington, VT, on the brief), for appellee.

Before: NEWMAN, Chief Judge, and McLAUGHLIN, Circuit Judge.*

JON O. NEWMAN, Chief Judge:

This appeal concerns the relationship between a district court's authority to vacate an illegal sentence and its authority to modify the terms of supervised release. The precise issue is whether one component of a sentence—restitution—that was not challenged either on direct review or under 28 U.S.C. § 2255, may nonetheless be modified because restitution was made a condition of supervised release and supervised release may be modified pursuant to 18 U.S.C. § 3583(e)(2). This issue arises on an appeal by Roger Lussier from the February 8, 1996, order of the District Court for the District of Vermont (Franklin S. Billings, Jr., Judge), dismissing for lack of jurisdiction Lussier's motion under subsection 3583(e)(2) to amend a previously imposed order of restitution on the ground that the order violated the principle of *Hughey v. United States*, 495 U.S. 411, 110 S.Ct. 1979, 109 L.Ed.2d 408 (1990), restricting the amount of restitution to the victim's loss directly traceable to the offense underlying a count of conviction. We agree with the District Court that it lacked authority to entertain Lussier's challenge to the legality of the restitution order under subsection 3583(e)(2).

## Background

Lussier was the former president and chairman of the board of Lydonville Savings Bank ("LSB"). During the late 1980s and early 1990s, he engaged in a pattern of fraud and deceit relating to his control of LSB. In December 1993, Lussier was convicted on seventeen counts of various banking crimes in connection with his exercise of bank power to further his personal financial interests. He was sentenced to forty-six months' imprisonment followed by two years of supervised release, and ordered to pay a $100,000 fine and $426,204.67 in restitution to LSB. The District Court also required, as a condition of supervised release, that Lussier pay both the fine and the restitution in installments of at least 10 percent of his gross monthly income.

On direct review, Lussier raised numerous challenges to both his conviction and sentence, including a challenge to the District Court's loss calculation under U.S.S.G. § 2F1.1, but did not dispute the restitution order. This Court affirmed the conviction and sentence in their entirety, discussing in detail only Lussier's claim concerning trial counsel's alleged conflict of interest and rejecting his other arguments as "without merit." *United States v. Lussier*, 71 F.3d 456, 464 (2d Cir.1995).

Within days of the issuance of this Court's mandate in December 1995, Lussier filed a motion in the District Court to rescind the restitution order under 18 U.S.C. §§ 3583(e)(2) & 3663(g). In that motion, he argued for the first time that the order was illegal because the amount of restitution was based on a particular check-kiting scheme that, although properly part of the Court's loss calculation pursuant to U.S.S.G. § 2F1.1 as relevant conduct under U.S.S.G. § 1B1.3, was not the basis of any of the seventeen counts of conviction. Therefore, he contended, the order of restitution was improper under the federal restitution statute, 18 U.S.C. § 3663 *et seq.*,[1] as construed in *Hughey*, 495 U.S. at 413, 110 S.Ct. at 1981 (restitution statute "authorize[s] an award of restitution only for the loss caused by the specific conduct that is the basis of the offense of conviction" and not for loss caused by relevant conduct properly included in offense level calculation); *see United States v.*

---

* Honorable J. Edward Lumbard withdrew from the panel shortly before oral argument, and the appeal is being disposed of by the remaining members of the panel, who are in agreement. *See* Second Circuit Local Rule § 0.14(b); *Murray v. National Broadcasting Co.*, 35 F.3d 45 (2d Cir.1994).

1. The Victim and Witness Protection Act ("VWPA"), 18 U.S.C. § 3663 *et seq.*, was significantly modified by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104–132, §§ 201–211, 110 Stat. 1214, 1227–1241 (1996). Because the new law applies only to sentencing proceedings in cases where the defendant was convicted on or after April 24, 1996, *see* section 211, 110 Stat. at 1241, the 1996 amendments do not affect this case. Throughout this opinion, therefore, we will cite to the former version of the VWPA.

*Silkowski*, 32 F.3d 682, 688 (2d Cir.1994). Lussier further argued that the District Court had jurisdiction to entertain this motion because (i) payment of the restitution in installments was a condition of his supervised release under 18 U.S.C. § 3663(g), and (ii) pursuant to 18 U.S.C. § 3583(e)(2), the sentencing court "may modify, reduce, or enlarge" conditions of supervised release at any time.

The District Court did not reach the merits of Lussier's *Hughey* claim because it concluded that it lacked the authority under subsection 3583(e)(2) and section 3663(g) to modify the restitution order on the ground of illegality.

### Discussion

■■■■ Lussier's argument is as follows. First, he points to section 3663(g), which states that if a defendant is placed on probation or sentenced to a term of supervised release, "any restitution ordered under this section shall be a condition of such probation or supervised release." [2] Next, he points to subsection 3583(e)(2), which permits the sentencing court, after considering factors set forth in section 3553(a), to "modify, reduce, or enlarge the conditions of supervised release, at any time prior to the expiration or termination of the term of supervised release." Reading the two sections together,[3] Lussier argues that the District Court has authority under these sections to modify or reduce—or vacate altogether—its order of restitution as a violation of *Hughey*, even

though Lussier failed to raise this claim on direct appeal and does not now invoke 28 U.S.C. § 2255 as the basis of the District Court's jurisdiction. Because the court can modify conditions of supervised release under subsection 3583(e)(2), he concludes, it can modify a restitution order that was made a condition of supervised release pursuant to section 3663(g).

Even if we assume that subsection 3583(e)(2) authorizes the District Court to make some modifications of restitution orders that are conditions of supervised release, we believe that the District Court was without authority to modify such orders on the ground of illegality. Lussier's assumption that the District Court can use subsection 3583(e)(2) to rescind its restitution order as violative of *Hughey* is inconsistent with the plain language of subsection 3583(e)(2), ignores the context in which this provision appears, and disrupts the established statutory scheme governing appellate review of illegal sentences.

The plain language of subsection 3583(e)(2) indicates that the illegality of a condition of supervised release is not a proper ground for modification under this provision. Subsection 3583(e)(2) requires the court, as it decides whether or how to modify the conditions of supervised release, to consider many of the same factors that it is required to consider in originally imposing a sentence upon a convicted defendant. 18 U.S.C. § 3583(e)(2) (cross-referencing several provi-

---

**2.** This section has been repealed by the AEDPA. *See* Pub.L. No. 104–132, § 205(a)(2), 110 Stat. at 1230.

**3.** Lussier also argues that section 3663(g) itself provides the District Court with authority to modify the restitution order at any time. He cites the passage immediately following the part of section 3663(g) quoted in the text:

The court may revoke probation or a term of supervised release, *or modify the term or conditions of probation or a term of supervised release*, or hold a defendant in contempt pursuant to section 3583(e) if the defendant fails to comply with such [a restitution] order.

18 U.S.C. § 3663(g) (emphasis added). Lussier reads this provision as authorizing the sentencing court to modify all conditions of supervised release, including restitution orders that are also conditions of supervised release. *See United States v. Johnson*, 48 F.3d 806, 808 (4th Cir.

1995) (citing section 3663(g) and noting that court is "authorized to revoke or modify a restitution order").

The plain meaning of this passage, however, is that when a defendant fails to comply with the court's restitution order, the court may respond by, among other things, modifying the term or conditions of supervised release. It does not authorize the court to modify the restitution order itself, even if it happens to be a condition of supervised release. Seen in their proper context, this passage and the remainder of section 3663(g) merely "discuss[ ] the factors to be considered" by the District Court in determining the proper remedy for a defendant's "failure to comply with a restitution order." *United States v. Webb*, 30 F.3d 687, 690 (6th Cir.1994). Section 3663(g) is "not [aimed] at modifying the obligation to make restitution." *Id.* at 690.

sions of section 3553(a), which delineates the "[f]actors to be considered in imposing a sentence." *See* S.Rep. No. 98–225, at 75–78 (1984) ("*Senate Report*"), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3258–61 (discussing section 3553(a)). Specifically, section 3583(e)— of which subsection 3583(e)(2) is a part— provides that the court may modify conditions of supervised release, "after considering the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), and (a)(6)." 18 U.S.C. § 3583(e); *see also Senate Report* at 124–25, *reprinted in* 1984 U.S.C.C.A.N. at 3307–08 ("Subsection (e) permits the court, after considering the same factors considered in the original imposition of a term of supervised release to ... modify, reduce or enlarge the conditions of supervised release...."). [4] These factors include:

(i) "the nature and circumstances of the offense and the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1);

(ii) the need for the sentence imposed "to afford adequate deterrence to criminal conduct," *id.* § 3553(a)(2)(B), "to protect the public from further crimes of the defendant," *id.* § 3553(a)(2)(C), and "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner," *id.* § 3553(a)(2)(D);

(iii) the "kinds of sentence and the sentencing range established for the applicable category of offense [or violation of probation or supervised release] committed by the applicable category of defendant" under the Sentencing Guidelines, *id.* § 3553(a)(4);

(iv) "any pertinent policy statement issued by the Sentencing Commission," *id.* § 3553(a)(5); and

(v) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct...." *Id.* § 3553(a)(6). Subsection 3583(e)(2), in sum, requires the court to consider general punishment issues such as deterrence, public safety, rehabilitation, proportionality, and consistency, when it decides to "modify, reduce, or enlarge" the term or conditions of supervised release.

Conspicuously absent from the list of relevant considerations is the legality of the condition. Although the question of whether a condition of release is authorized by law is surely a necessary one for the sentencing court to answer, it is a question logically distinct from the court's decision to impose a punishment that best serves the often conflicting goals of the criminal law. Subsection 3583(e)(2) on its face authorizes the court to modify conditions of supervised release only when general punishment goals would be better served by a modification. It does not authorize the court to assess the lawfulness of a condition of release. Other procedures, such as a direct appeal under 18 U.S.C. § 3742 or a collateral attack under 28 U.S.C. § 2255, are available to challenge the legality of a condition of supervised release, as long as the requirements of those procedures have been met.

The context in which subsection 3583(e)(2) applies also indicates that it does not authorize Lussier's challenge. Section 3583(e) sets out the four ways that a district court—after considering the section 3553(a) factors discussed above—can subsequently alter the term or conditions of supervised release after a defendant has been initially sentenced to a term of supervised release. *See United States v. Morales,* 45 F.3d 693, 696 (2d Cir. 1995); *United States v. Malesic,* 18 F.3d 205,

---

**4.** Subsection 3583(e)(2) itself provides that the court may modify conditions of supervised release "pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation and the provisions applicable to the initial setting of the terms and conditions of post-release supervision." Rule 32.1(b) establishes the procedures governing the modification of probation or supervised release. Fed. R.Crim.P. 32.1(b); *see United States v. Morales,* 45 F.3d 693, 698 (2d Cir.1995). Section 3583(c) requires the court, in originally determining the term and conditions of supervised release, to consider the same factors listed in section 3583(e)—namely, sections 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), and (a)(6). Section 3583(d)(1)-(3) additionally requires that an imposed condition "is reasonably related to the factors set forth" in section 3553(a), "involves no greater deprivation of liberty than is reasonably necessary for the purposes set forth" in section 3553(a), and "is consistent with any pertinent policy statements issued by the Sentencing Commission."

206 (3d Cir.1994); *United States v. Williams,* 2 F.3d 363, 363–64 (11th Cir.1993). As summarized by the Sixth Circuit, these are:

> First, where a defendant has served at least one year of his supervised release and his conduct and the interests of justice so require, the court may terminate the remainder of the defendant's supervision [18 U.S.C. § 3583(e)(1) ];
>
> Second, pursuant to the procedures of [Fed.R.Crim.P.] 32 and 32.1, the court may modify the conditions of a defendant's supervised release and may extend a defendant's term of supervised release to the maximum that originally could have been imposed [*id.* § 3583(e)(2) ];
>
> Third, where a defendant's violation of a condition of his supervised release has been shown by a preponderance of the evidence, the court may revoke the defendant's supervised release and may order the defendant incarcerated for all, or any portion, of the term which was originally ordered to be served under supervised release [*id.* § 3583(e)(3) ]; [and]
>
> Fourth, where incarceration is permitted, the court may order a defendant placed under "house arrest" and this restriction may be monitored by telephone or electronic signaling devices [*id.* § 3583(e)(4) ].

*United States v. Truss,* 4 F.3d 437, 438–39 (6th Cir.1993).

Section 3583(e) provides the district court with retained authority to revoke, discharge, or modify terms and conditions of supervised release following its initial imposition of a supervised release term in order to account for new or unforeseen circumstances. Occasionally, changed circumstances—for instance, exceptionally good behavior by the defendant or a downward turn in the defendant's ability to pay a fine or restitution imposed as conditions of release—will render a previously imposed term or condition of release either too harsh or inappropriately tailored to serve the general punishment goals of section 3553(a). In such cases, the court may invoke either subsection (1), which "works to the advantage of the defendant," or subsection (2), which "can be employed either to the defendant's advantage or his disadvantage," *id.* at 439, to discharge the defendant from supervised release, to modify and make less demanding the conditions of release, or to reduce the length of the term of release. Alternatively, new circumstances may arise that require a longer term or harsher conditions of supervised release in order to further the general punishment goals of section 3553(a)—for instance, the defendant's violation of conditions of release or the discovery of information indicating that the defendant has secreted important financial assets. *See, e.g., United States v. Allen,* 2 F.3d 538, 539 (4th Cir.1993) (additional term of residence in community service center); *United States v. Stout,* No. 89–00317–01, 1996 WL 251874 at *1 (E.D.Pa. April 30, 1996) (increased restitution payment).

Lussier's *Hughey*-based challenge, endeavoring to dispute the legality of the restitution order, does not involve changed circumstances or affect in any way general punishment aims such as deterrence, rehabilitation, and proportionality. The District Court could not, therefore, rely on subsection 3583(e)(2) to modify the restitution order on this ground. *See Truss,* 4 F.3d at 439 (noting that subsection 3583(e)(2) "recogniz[es] that the 'sentencing court must be able to respond to changes in the [defendant's] circumstances as well as new ideas and methods of rehabilitation'") (citing Fed.R.Crim.P. 32.1(b) advisory committee's notes); *United States v. Kress,* 944 F.2d 155, 158 n. 4 (3d Cir.1991) (rejecting defendant's attempt to rely on Rule 32.1(b)—cross-referenced in subsection 3583(e)(2)—to challenge legality of sentencing order because "Rule 32.1(b) motions … are vehicles for modifying conditions of probation [or supervised release] when changing circumstances warrant it, or when terms in the order are unclear").

Finally, Lussier's assertion that the District Court had jurisdiction to entertain his *Hughey* challenge under subsection 3583(e)(2) is inconsistent with the scheme of appellate and collateral review established by the Sentencing Reform Act of 1984. Prior to the implementation of this act, defendants convicted of federal offenses had three primary ways of obtaining review of their sentences on the ground of illegality: (1) they

could challenge their sentences on direct appeal; (2) they could initiate a habeas corpus proceeding pursuant to 28 U.S.C. § 2255; and (3) they could "pursue relief before the sentencing judge by filing a motion at any time during service of the sentence under the version of Fed.R.Crim.P. 35(a) then in existence." *United States v. Jordan,* 915 F.2d 622, 626 (11th Cir.1990).[5] The Sentencing Reform Act, among other things, "greatly changed the methods by which sentences are imposed and challenged." *United States v. Essig,* 10 F.3d 968, 979 (3d Cir.1993). First, Congress enacted 18 U.S.C. § 3742, which affords both the defendant and the Government an opportunity to appeal certain guidelines sentences. Congress also amended Rule 35(a), *see* Pub.L. No. 98–473, tit. II, § 215(b), 98 Stat. 1837, 2015–16 (1984), which now authorizes the district court, on remand, only to "correct a sentence that is determined on appeal under 18 U.S.C. § 3742 to have been imposed in violation of law." *See United States v. Henrique,* 988 F.2d 85, 86 (9th Cir.1993); *see also* Fed.R.Crim.P. 35(c) (authorizing district court to correct "arithmetical, technical, or other clear error" within seven days of imposition of sentence).[6] Congress thus "explicitly foreclosed [the Rule 35(a) ] route for obtaining judicial review of an allegedly illegal sentence" at any time. *Jordan,* 915 F.2d at 627–28. No changes, however, were made to 28 U.S.C. § 2255 by the 1984 Act. *Id.* at 627–29.

The Eleventh Circuit in *Jordan* described the effects of the 1984 Act in the following way:

> Congress' enactment of § 3742 and simultaneous repeal of former Rule 35(a) can easily be understood as an attempt to streamline the manner in which sentencing challenges arising during the original criminal prosecution can be presented. By leaving § 2255 unmodified, however, Congress guaranteed that review and relief would be available to ensure that, if for some bona fide reason a defendant did not or was not able to avail himself of a direct appeal, fundamental errors could nonetheless be corrected.

*Id.* at 628 (emphasis in original omitted); *see also* Fed.R.Crim.P. 35 advisory committee's notes ("The Committee's assumption is that a defendant detained pursuant to [a plainly illegal] sentence could seek relief under 28 U.S.C. § 2255 if the seven day period provided in Rule 35(c) has elapsed. Rule 35(c) and § 2255 should thus provide sufficient authority for a district court to correct obvious sentencing errors.").

The streamlined scheme of sentencing review established by the 1984 Act would be disrupted by the acceptance of Lussier's interpretation of subsection 3583(e)(2). It would authorize the district court, at any time, to modify or rescind an allegedly illegal condition of supervised release. Nothing in the text or the legislative history of section 3583(e), however, indicates that Congress intended to enact a mini version of the pre–1984 Rule 35(a) and make it applicable only to conditions of supervised release.

## Conclusion

Based on the plain language of subsection 3583(e)(2), its context, and the undesirable consequences flowing from a contrary interpretation, we conclude that the District Court did not have authority under this subsection to modify or rescind the restitution order on the ground of illegality. We do not decide whether other avenues of review are available to Lussier to raise his *Hughey*-based objection to the restitution order.

---

**5.** Former Rule 35(a), applicable to offenses committed before November 1, 1987, *see* Pub.L. No. 99–217, 99 Stat. 1728 (1985), authorized a court to "correct an illegal sentence at any time."

**6.** In *United States v. Rico,* 902 F.2d 1065, 1067 (2d Cir.1990), this Court read the new Rule 35(a) as permitting the district court to correct illegal sentences within the time fixed for filing a notice of appeal as part of the court's "inherent powers." Subsequently, Congress enacted Rule 35(c), which "codifies the result" in *Rico,* "but provides a more stringent time requirement"—seven days—for the exercise of the district court's power. Fed.R.Crim.P. 35 advisory committee's notes; *see United States v. Werber,* 51 F.3d 342, 348 (2d Cir.1995).