UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                    No. 99-4239

NORWOOD MCMAHON, a/k/a Woody,
Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
T. S. Ellis, III, District Judge.
(CR-95-82)

Argued: May 1, 2000

Decided: July 28, 2000

Before WILKINSON, Chief Judge, and LUTTIG and
MICHAEL, Circuit Judges.

_____

Affirmed in part and vacated in part by unpublished per curiam opin-
ion.

_____

**COUNSEL**

**ARGUED:** Nina Jean Ginsberg, DIMURO, GINSBERG & LIEBER-
MAN, P.C., Alexandria, Virginia, for Appellant. Mark Anthony
Exley, Assistant United States Attorney, Norfolk, Virginia, for Appel-
lee. **ON BRIEF:** Helen F. Fahey, United States Attorney, Dennis M.
Kennedy, Assistant United States Attorney, Norfolk, Virginia, for
Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Norwood McMahon appeals his conviction for criminal contempt for refusing to cooperate with the United States Probation Office and for wilfully siphoning assets away from Associated Health Services, all in an effort to prevent that company from paying a fine imposed upon it as part of a criminal sentence. In a related matter, McMahon also appeals the district court's order modifying the payment schedule for the restitution ordered in his own sentence. We affirm the conviction for criminal contempt and vacate the modification order because the district court lacked jurisdiction.

I.

Between 1987 and 1991 Norwood McMahon and Associated Health Services (AHS), d/b/a the Health Development Center, engaged in a fraudulent scheme to obtain reimbursement from Medicare, Medicaid, and various other insurance programs and companies for patient services that were not ordinarily reimbursable. In May 1991, after the illegal activity had concluded, McMahon sold his interest in AHS's Annandale, Virginia, office and bought the entire interest in the company's Manassas office. AHS was dissolved and McMahon established a new corporation, Health Development Center, PC (HDC), in which he was the sole shareholder. HDC assumed the assets, liabilities, and goodwill of AHS's Manassas office.

The insurance scheme was discovered in 1993, and in June 1995 McMahon and AHS were convicted for conspiracy to defraud the United States, false claims, mail fraud, money laundering, and structuring financial transactions. In November 1995 the district court sentenced McMahon to 44 terms of 51 months imprisonment (to be served concurrently), a three-year term of supervised release, restitution in the amount of $100,000, and a special assessment of $2,200.

2

With respect to McMahon's restitution, $37,400 was due and payable immediately, with the balance to be paid according to a schedule set at the direction and discretion of the probation officer. The district court sentenced AHS to one year of probation, a fine of $32,000, and a special assessment of $6,400. The amount of AHS's fine was based on the determination in the presentence report that HDC had a net worth of $32,000. The fine and the special assessment were due in full immediately. McMahon and AHS appealed their convictions, and we affirmed. See United States v. McMahon, 151 F.3d 1031 (4th Cir. 1998) (table).

AHS did not pay the fine or the special assessment. The probation officer assigned to AHS contacted McMahon, who was AHS's corporate representative. McMahon informed the officer that AHS had been dissolved and that his new business, HDC, was in no way affiliated with AHS. Consequently, McMahon asserted that he had no obligation to furnish information about the finances of AHS or HDC.

On April 11, 1996, the district court directed McMahon to cooperate with the probation office by answering its questions regarding AHS. The probation officer then sent McMahon a list of fourteen questions about AHS and an additional twelve questions about HDC. McMahon provided cursory answers to the questions about AHS, but again refused to provide any information concerning HDC on the ground that information concerning HDC's finances was relevant only in determining his own ability to pay restitution. On August 28, 1996, the district court determined that HDC was a mere continuation and successor of AHS and ordered McMahon "to respond and answer fully all of the Probation Officer's questions concerning the assets and operation of HDC, PC." United States v. Associated Health Servs., Crim. No. 95-0082-A (E.D. Va. Aug. 28, 1996). The probation officer then submitted a list of twenty questions concerning HDC's finances and assets. McMahon's responses generally pled ignorance of HDC's finances and assets.

Throughout the period after sentencing, but before he was required to surrender to the United States Marshal, McMahon continued to operate HDC, using HDC funds to loan himself money, to reimburse his own automobile expenses, and to pay a psychic. On reference from the district court, the magistrate judge determined that

3

McMahon had "fraudulently and wilfully secreted, transferred, and otherwise disposed of the corporate Defendant's assets with the intent to hinder, delay, or defraud" the United States in its efforts to obtain the $32,000 fine and $6,400 special assessment. The magistrate judge then returned the matter to the district court for a determination whether McMahon's conduct constituted criminal contempt. The district court found McMahon guilty and sentenced him to 90 days imprisonment.

II.

McMahon argues that the evidence of criminal contempt was insufficient to support his conviction. When assessing the sufficiency of the evidence of a criminal conviction on direct review, "[t]he verdict . . . must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it." Glasser v. United States, 315 U.S. 60, 80 (1942). "To support a conviction of criminal contempt for violation of a court order, it must be proved beyond a reasonable doubt, that a person willfully, contumaciously, intentionally, with a wrongful state of mind, violated a decree which was definite, clear, specific, and left no doubt or uncertainty in the minds of those to whom it was addressed." United States v. McMahon, 104 F.3d 638, 642 (4th Cir. 1997) (quoting Richmond Black Police Officers Assoc. v. City of Richmond, 548 F.2d 123, 129 (4th Cir. 1977)). We find that the evidence of McMahon's criminal contempt was indeed substantial, and we affirm.

The sentencing order clearly and unambiguously required that AHS immediately pay a fine of $32,000. The district court arrived at the $32,000 figure based on HDC's net worth and ability to pay, as indicated by the presentence report. McMahon's assertion that HDC was not affiliated with AHS and consequently was not liable for the fine simply was not credible. As the district court found, HDC was the clear successor to AHS. It assumed AHS's assets, liabilities, and goodwill. It operated out of the same office and even used the same taxpayer identification number. Faithful compliance with the sentencing order required that McMahon, as AHS's corporate representative, use HDC's existing assets to pay the fine. Instead, McMahon used HDC's funds to loan himself money, pay himself automobile expenses, and consult a psychic. Even as he dissipated the company's

4

meager assets, he failed to use its revenues to pay any amount toward the fine.

At the same time, the government's efforts to trace AHS and HDC's assets were frustrated to a considerable extent by McMahon's refusal to provide meaningful information about HDC's assets and liabilities. Instead, he provided answers that,"charitably characterized, were evasive," in the words of the district court. For example, of the $21,257 in loans receivable to HDC, McMahon claimed he only knew of a single loan to his ex-wife. He provided almost no information about the disposition of HDC's medical equipment, furniture, and fixtures, some (if not all) of which apparently was sold. In short, McMahon did not provide specific information in response to a single question asked of him.

The district court found that McMahon's conduct fell into "a pattern and practice of siphoning funds away and avoiding paying the fine and special assessment." In light of HDC's clear obligation (as AHS's successor) to pay the fine, McMahon's continued dissipation of HDC assets and his evasive responses to the probation officer's questions provide substantial evidence of criminal contempt. We therefore affirm.

III.

McMahon's original sentence directed that he pay restitution in the amount of $100,000, with $37,400 due and payable immediately. The balance of the restitution was to be paid on a schedule set by the probation officer. Shortly before sentencing in this case, we held that a federal court may not delegate the judicial function of setting the amount of restitution and schedule of repayment. See United States v. Johnson, 48 F.3d 806, 808-09 (4th Cir. 1995); see also United States v. Blake, 81 F.3d 498, 507 (4th Cir. 1996). Recognizing that the district court's restitution order was in error, the government moved to modify it. The district court granted the motion and ordered a payment schedule.

McMahon appeals the district court's modification order, arguing that his original sentence was a final judgment that the district court lacked jurisdiction to alter. We agree. It is, of course, beyond question

5

that courts have the power to modify restitution orders in appropriate circumstances. Indeed, Congress has expressly conferred that authority. See 18 U.S.C. § 3613A (permitting court to enter or adjust a payment schedule "[u]pon a finding that the defendant is in default on a payment of a fine or restitution"); id.§ 3664(k) (permitting court to "adjust the payment schedule, or require immediate payment in full," upon receiving notice of a material change in defendant's economic circumstances); id. § 3664(n) (requiring a defendant who receives substantial resources during a period of incarceration to apply the value of those resources to any restitution owed). [1]

However, the government did not move to modify the restitution order on the basis of any of these changed circumstances. Rather, it moved to modify the sentence on the ground that it was illegal. A sentencing court's authority to correct a sentence because of legal error, however, is limited. For seven days after the imposition of sentence, the court retains the power to "correct a sentence that was imposed as a result of arithmetical, technical, or other clear error." Fed. R. Crim. P. 35(c) (codifying rule of United States v. Cook, 890 F.2d 672, 674-75 (4th Cir. 1989), but adding stricter time limit). Once those seven days have passed, the sentencing court cannot modify a restitution order on grounds of illegality.[2] See United States v. Lussier, 104 F.3d 32, 34 (2d Cir. 1997).

In Lussier the defendant was convicted of various banking crimes.

———————————————————————————————

[1] The government also cites 18 U.S.C. § 3572(d)(1), which states that "A person sentenced to pay a fine or other monetary penalty, including restitution, shall make such payment immediately, unless, in the interest of justice, the court provides for payment on a date certain or in installments. If the court provides for payment in installments, the installments shall be in equal monthly payments over the period provided by the court, unless the court establishes another schedule." This last clause, "unless the court establishes another schedule," simply allows the sentencing court to make an exception from the presumptive rule of equal monthly payments when it initially imposes the sentence. It does not confer upon the court the authority to modify the sentence at a later date by establishing another payment schedule.

[2] Since the correction in this case took place over three years after imposition of the sentence, Rule 35(c) clearly does not apply.

6

His sentence required, as a condition of his supervised release, that he make restitution for the losses caused by those offenses. In addition, he was required to make restitution for losses caused by a check kiting scheme for which he was not convicted, but which was considered by the court as relevant conduct. After unsuccessfully appealing his conviction and sentence on other grounds, Lussier moved the district court to modify the conditions of his supervised release under 18 U.S.C. § 3583(e)(2) by amending the restitution order. Modification was warranted, Lussier argued, because restitution may only be imposed based on losses directly traceable to a count of conviction. See Hughey v. United States, 495 U.S. 411 (1990). The district court held that it lacked jurisdiction to consider Lussier's claim that his sentence was illegal, and the court of appeals affirmed. Section 3583(e)(2) does permit a district court to modify the conditions of supervised release, but only upon a showing of changed circumstances. See Lussier, 104 F.3d at 35; 18 U.S.C. § 3553(a)(1)-(6). Since Lussier did not allege changed circumstances, the district court lacked jurisdiction to consider his challenge to his sentence. See Lussier, 104 F.3d at 36. Moreover, permitting a defendant to challenge the legality of his sentence in the district court, after he had already pursued a direct appeal, would disrupt "the established statutory scheme governing appellate review of illegal sentences." Id. at 34.

The statutes permitting modification of restitution orders, like 18 U.S.C. § 3583(e)(2), permit such modification only for changed circumstances, not because the underlying sentence is illegal. Once the seven days allowed by Fed. R. Crim. P. 35(c) have passed, the only means of challenging an illegal sentence is through direct appeal or, where appropriate, a collateral attack under 28 U.S.C. § 2255. Therefore, we hold that the district court exceeded its jurisdiction when it granted the government's motion to modify the restitution order.[3]

McMahon thus prevails, but gains nothing. The substantive terms of the modified sentencing order appear to be identical to those of the original order; neither the total amount of restitution, nor the amount that was due immediately has been changed. Although the original

_____

[3] If there has been change in circumstances such that 18 U.S.C. §§ 3613A, 3664(k), or 3664(n) does apply in this case, either party may of course move for a modification of the restitution order.

order clearly contained an improper delegation, McMahon waived any challenge to that order when he failed to raise the error in his direct appeal. See McMahon, 151 F.3d 1031 (4th Cir. 1998). At this stage, any challenge to the legality of McMahon's sentence must be pursued through a section 2255 petition, if at all. Since no such petition is before us, we express no opinion on its possible merits.

For the reasons stated, we hold that the district court exceeded its jurisdiction when it modified its restitution order on grounds of illegality. We therefore vacate the district court's order of March 5, 1999, which directed McMahon to make restitution according to a prescribed schedule.

IV.

McMahon's conviction for criminal contempt is affirmed. The district court's modification of its restitution order is vacated. That court's sentencing order of November 9, 1995, and the related sentencing memorandum of November 14, 1995, are therefore reinstated.

AFFIRMED IN PART AND VACATED IN PART

8