NGUYEN, Circuit Judge,
dissenting:
Dennis Emmett filed a bare-bones ex parte application which merely reargued, in little more than a page, matters already previously considered by the district court. As the majority correctly concludes, the district court applied the proper legal standard to deny Emmett’s application. Yet, the majority nevertheless vacates the ruling on the ground that the district court failed to explain adequately its reasoning. Because the majority opinion gives short shrift to the “wide latitude” accorded to district courts in sentencing matters, and needlessly extends our case law in a manner that elevates form over substance, I respectfully dissent.
I
A
“In fashioning conditions of supervised release, a district court ‘has at its disposal all of the evidence, its own impressions of a defendant, and wide latitude.’ ” United States v. Weber, 451 F.3d 552, 557 (9th Cir.2006) (quoting United States v. Williams, 356 F.3d 1045, 1052 (9th Cir.2004)). And “[i]n light of this ‘wide latitude,’ we give considerable deference to a district court’s determination of the appropriate supervised release conditions, reviewing those conditions deferentially, for abuse of discretion.” Id. This significant degree of discretion also applies, of course, when the court is asked to modify or terminate supervised release. United States v. Bainbridge, 746 F.3d 943, 946-47, No. 13-30017, 2014 WL 878832, at *3 (9th Cir. Mar. 6, 2014).
Naturally, though, the court’s discretion is not unbounded. Weber, 451 F.3d at 557. Under 18 U.S.C. § 3583(e), the district court must “consider[]” the factors set forth at 18 U.S.C. § 3553(a), and explain its decision. United States v. Carty, 520 F.3d 984, 992-93 (9th Cir.2008) (en banc) (district court must explain initial sentencing determination). “However, we have held that there is no mechanical requirement that a sentencing court discuss every factor; even where a judge never mentions ‘ § 3553(a),’ it may be clear from the court’s experience and consideration of the record that the factors were properly taken into account.” United States v. Trujillo, 713 F.3d 1003, 1009 (9th Cir.2013) (citing Carty, 520 F.3d at 995-96). While the court should generally address “nonfrivo-lous” arguments raised by a defendant, the majority opinion fails to acknowledge that such arguments must also be “specific,” and “tethered to a relevant § 3553(a) factor in support of a requested sentence!.]” Carty, 520 F.3d at 992-93.
B
Now consider the facts of this case. The Presentence Report prepared by the probation office, and reviewed by the court prior to sentencing, extensively detailed the offense conduct, the relevant sentencing factors, Emmett’s criminal history, and *823 his personal and family history, including Emmett’s health, educational, and employment background, and his financial condition. Thus, for example, the district court was informed that, over a period of four years, Emmett and his cohorts bilked tens of thousands of victims (mostly the elderly) out of their money, at least between $14 million to $20 million; that he faced a Guidelines sentencing range of 121 to 151 months; that he had a prior drunk driving offense; that he had training and experience in computer programming and consulting, but almost no assets; and, on and on. The sentencing briefing of the parties — over 30 pages of argument alone— further discussed every relevant facet of Emmett’s life and anticipated sentence. The court ultimately sentenced Emmett to a substantially below-Guidelines sentence of 51 months, followed by a term of three years of supervised release, consistent with U.S.S.G. § 5D1.2(a)(2), and the mail fraud violation to which Emmett pled, 18 U.S.C. § 1341. No one contends that the court did so lightly, or that the court failed to consider carefully the extensive record before it prior to sentencing. It is against this backdrop that we must consider the court’s disposition of Emmett’s subsequent application for relief.
Ultimately, “[w]hat constitutes a sufficient explanation [by the district court of its sentencing decision] will necessarily vary depending on the complexity of the particular case[.]” Carty, 520 F.3d at 992. Emmett’s application for early termination of supervised release is not complex. In fact, there is nothing to it. When Emmett was originally sentenced, he did not object to the court’s imposition of a three-year term of supervised release. Now, he has filed an application that, in little more than a page, mostly reiterates arguments already made at the time of sentencing, before the same district judge who originally sentenced him.[1] He presents virtually no information that was not already known to, and considered by, the court at the initial sentencing.
What does Emmett’s 450-word filing actually say? First, he argues that further supervision is unnecessary because he has not reoffended and has complied with the terms of his sentence. That contention, which is not tethered to a § 3553(a) factor, is plainly meritless and does not require a response. On the day Emmett was sentenced, he was fully expected, and indeed legally required, to comply with the terms of his supervised release.[2] Next, Emmett generally reminds the court of “the nature of the offense, and the history and circumstances of the defendant” — the crime was nonviolent, he is now several years older, et cetera — all facts that were considered, and entirely foreseeable, by the court at the time of sentencing. Again, these observations are not supported by citation to any § 3553(a) factor, and do not warrant *824 “explanation” from the court. Next, Emmett also notes that he is not receiving counseling or other care in connection with his supervision. That is not a revelation, either. Because Emmett refused to discuss substance abuse with the probation office on the advice of counsel, the court did not recommend that he receive counseling. The only new piece of information Emmett presents is the fact of his recent unemployment. And the only § 3558(a) factor Emmett specifically invokes is subsection (a)(2)(D), which pertains to the provision of training and counseling programs.[3]
It is defendant’s burden to establish that he is entitled to the rarely-granted remedy of early termination of supervised release. Weber, 451 F.3d at 559 n. 9 (citing United States v. Weintraub, 371 F.Supp.2d 164 (D.Conn.2005)). This is usually accomplished by alerting the district court to “unforeseen” or “changed circumstances” that implicate its initial sentencing decision and analysis. United States v. Miller, 205 F.3d 1098, 1101 (9th Cir.2000) (quoting United States v. Lussier, 104 F.3d 32, 36 (2d Cir.1997)). See also Fed.R.Crim.P. 32.1(b) Advisory Committee Note (§ 3583(e) recognizes that the “sentencing court must be able to respond to changes in the [defendant’s] circumstances as well as new ideas and methods of rehabilitation”). To be sure, changed circumstances are not necessarily required to warrant early termination — but that is so merely to preserve district courts’ discretion, not to relieve defendants of their burden. See Bainbridge, 746 F.3d at 949, 2014 WL 878832, at *5. Mere reargument of matters already considered by the court, and without citation to the relevant § 3553(a) factors, certainly borders on frivolous within the meaning of Carty, 520 F.3d at 992, and in any case, cannot possibly merit relief.
Here, the district court quite reasonably exercised its considerable discretion to deny Emmett’s application summarily, commenting only that continued supervision would not entail any “undue hardship” — an apparent reference to the only arguable “changed circumstance,” namely Emmett’s unemployment, and his argument, citing § 3553(a)(2)(D), that the probation office is not providing him any vocational training. If the court’s order is terse, that simply reflects the scanty basis for Emmett’s request. So what more does the majority want the district court to address? , It does not say specifically, but the troubling implication of its opinion is that even when a district court receives a cursory application that merely reiterates known facts, without any identified connection to the relevant legal factors, it nonetheless must take the time to explain again why its prior sentencing decision still holds.
II
To reach its conclusion, the majority relies heavily on United States v. Trujillo, 713 F.3d 1003, 1009 (9th Cir.2013), but the comparison is completely inapt. In Trujillo, the defendant offered “fairly extensive arguments and evidence” in support of his request to modify his sentence pursuant to retroactive revisions to the Sentencing Guidelines. Id. Trujillo’s arguments had never been raised previously to the district court, and concerned important changes in the law that might render his custodial *825 sentence excessive and unjustly disparate. We found error because “[t]he district court did not address any of [these arguments], even to dismiss them in shorthand.” Id. at 1010. This “total omission,” we reasoned, did not permit meaningful appellate review. Id. (citing Rita v. United States, 551 U.S. 338, 356, 127 S.Ct. 2456, 168 L.Ed.2d 203 (2007)).
By contrast, nothing prevents appellate review here. The record is brief and undisputed. Under the majority view, if the district court had said, “I considered these facts already,” would that have led to a different result? Presumably so, but isn’t that already quite obvious from the record? The majority opinion ignores the flimsiness of Emmett’s request, which leads it to an unreasonable conclusion.
Two additional points: First, the majority faults the district court for failing to hold a hearing, while ignoring that Emmett never requested one. Instead of a formal motion, Emmett chose to file an ex parte application with the apparent expectation that the court would handle it in chambers. Generally, no hearing is required if the court refuses to modify defendant’s sentence. Fed.R.Crim.P. 32.1(c) (subject to exceptions, court must hold a hearing “[b]efore modifying the conditions of probation or supervised release” (emphasis added)); see also United States v. Nonahal, 338 F.3d 668, 671 (7th Cir.2003) (“the rule does not compel the court to hold a hearing before refusing a request for modification”). Nor is a hearing required if the defendant waives his request for one. See Fed.R.Crim.P. 32.1(c)(2)(A). Plainly, none was required here.
Second, the majority criticizes the district court’s decision to rule without a response from probation or the government. But the court knew full well from Emmett’s ex parte application that probation and the government opposed early termination. See C.D. Cal. L.R. 7-19.1 (requiring statement of opposing counsel’s position to be included ex parte applications). And not even appellant contends that it was necessary or important for court to solicit the latter parties’ views before adjudicating the motion. Given the near total lack of anything new, I cannot find fault with the district court’s view that a more formal objection from the government was unnecessary.
Ill
In short, the majority’s impractical, overly formalistic approach not only fails to give the usual “considerable deference to a district court’s determination of the appropriate supervised release conditions,” Williams, 356 F.3d at 1052, it also needlessly burdens our already overloaded district courts. I must dissent.

. Ironically, by contrast, Emmett’s Opening Brief before this court spans 16 pages.

. A defendant’s "exceptionally good behavior” may render a previously-imposed sentence inappropriate or too harsh, but as the district courts of our circuit have repeatedly recognized, mere compliance is to be expected. United States v. Miller, 205 F.3d 1098, 1101 (9th Cir.2000) (quoting United States v. Lussier, 104 F.3d 32, 36 (2d Cir.1997)); United States v. Bauer, No. 5:09-cr-00980, 2012 WL 1259251, at *2 (N.D.Cal. Apr. 13, 2012) (it is "apparent that the reasons cited by Defendant — compliance with release conditions, resumption of employment and engagement of family life — are expected milestones rather than a change of circumstances rendering continued supervision no longer appropriate”); United States v. Grossi, No. CR-04-40127, 2011 WL 704364, at *2 (N.D.Cal. Feb. 18, 2011) ("Mere compliance with the terms of supervised release is what is expected, and without more, is insufficient to justify early termination.”).

, At argument, the government declined to characterize Emmett’s arguments as outright "frivolous,” but contrary to the majority opinion’s suggestion, Maj. Op. at 821 n.3, the government did not concede that Emmett adequately invoked all of the § 3553(a) factors, or more generally, that Carty required the district court to respond to any such non-frivolous arguments.